Andrew L. Schlafly (AS4533)
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
(908) 719-8608
*Attorney for Plaintiff Association of*
*American Physicians & Surgeons, Inc.*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) ) | **Civil Action** |
| vs. | ) ) ) | No. _____ |
| **AMERICAN BOARD OF MEDICAL SPECIALTIES,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

### COMPLAINT

The Association of American Physicians & Surgeons, Inc. ("AAPS" or "Plaintiff"), located at 1601 N. Tucson Blvd., Suite 9, Tucson, AZ 85716, seeks declaratory and injunctive relief and damages against the American Board of Medical Specialties ("ABMS" or "Defendant"), located at 222 North LaSalle Street, Suite 1500, Chicago, IL 60601, as follows:

### NATURE OF THE ACTION

1.  AAPS brings this action to end antitrust law violations and misrepresentations by ABMS concerning its proprietary recertification program,

which reduces access by patients to physicians. Defendant ABMS has agreed with 24 separate corporations, and acted in concert with a standard-setting organization, The Joint Commission, to compel physicians to spend enormous amounts of time and money to comply with Defendant's proprietary ABMS Maintenance of Certification®. There is no justification for requiring the purchase of Defendant's product as a condition of practicing medicine or being on hospital medical staffs, yet ABMS has agreed with others to cause exclusion of physicians who do not purchase or comply with Defendant's program. Defendant's program is a money-making, self-enrichment scheme that reduces the supply of hospital-based physicians and decreases the time physicians have available for patients, in violation of Section 1 of the Sherman Act.

2.     Defendant ABMS also makes false and misleading statements in disparagement of physicians who decline to participate in the ABMS Maintenance of Certification® program. ABMS enriches itself, its executives, and its co-conspirators by promoting falsehoods that its proprietary product is somehow indicative of the professional skills of a physician, when it is not.

3.     AAPS seeks declaratory and injunctive relief to enjoin Defendant's continuing violations of antitrust law and misrepresentations about the medical skills of physicians who decline to purchase and spend time on its program. AAPS further seeks a refund of fees paid by its members to ABMS and its co-conspirators as a result of ABMS's conduct alleged herein.

## THE PARTIES

4. Plaintiff AAPS was founded in 1943 and is a membership organization of thousands of practicing physicians in virtually all specialties. AAPS is incorporated under the laws of Indiana and headquartered in Tucson, Arizona. AAPS membership includes physicians practicing in New Jersey. Members of AAPS have been harmed by the ongoing antitrust violations by ABMS, and by its misrepresentations about professional medical skills and competency.

5. Defendant ABMS is a nonprofit entity incorporated in Illinois, which does business throughout the United States, including in New Jersey.

## JURISDICTION

6. This action arises under Section 16 of the Clayton Act, 15 U.S.C. § 26, to secure equitable relief against a continuation of the violations by Defendant of Section 1 of the Sherman Act, 15 U.S.C. § 1, and under Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble the amount of damages incurred by Plaintiff's members as a result of Defendant's violations. Interstate commerce for medical services is substantially affected by Defendant's conduct alleged herein. This court has subject matter jurisdiction here under 28 U.S.C. §§ 1331 and 1337(a).

7. Supplemental jurisdiction over Plaintiff's additional claim for negligent misrepresentation exists under 28 U.S.C. § 1367.

## **VENUE**

8. Venue is proper in the United States District Court for New Jersey, under 15 U.S.C. § 22 and 28 U.S.C. § 1391, because an event giving rise to this litigation occurred here, AAPS has members here, including its immediate Past-President, and Defendant conducts business here. By New Jersey statute, some certifying decisions by Defendant affect who may practice medicine in this State, N.J. Stat. § 45:9-8, and by regulation, certifying decisions by Defendant affect who may administer anesthesia in New Jersey outside of a hospital. N.J.A.C. 13:35-4A.12(b)(2)(ii).

## **STANDING**

9. Members of Plaintiff AAPS have suffered injury in the form of thousands of dollars of unjustified expense, hundreds of hours taken away from their care of patients, the exclusion from hospital medical staffs, and reputational harm, all due to the conduct and statements by Defendant ABMS as alleged herein. Plaintiff's requested declaratory and injunctive relief will prevent ongoing and imminent future injury. The protection of AAPS members from the antitrust violations and misrepresentations alleged herein is central to AAPS's purpose of safeguarding the practice of private medicine against interference. In addition, AAPS has long advocated transparency and accountability to the public in the regulation of medicine, which is absent from Defendant ABMS's imposition of immense burdens on the practice of medicine through agreements and concerted actions with other private organizations. Addressing Defendant's antitrust

violations and misrepresentations does not require participation in this lawsuit by individual AAPS members.

## ALLEGATIONS RELEVANT TO ALL COUNTS

10.　Defendant ABMS and 24 separate corporations have agreed to impose on physicians a recertification program called the ABMS Maintenance of Certification® (also known as "ABMS MOC®").

11.　These 24 corporations are:

The American Board of Allergy and Immunology, The American Board of Anesthesiology, The American Board of Colon and Rectal Surgery, The American Board of Dermatology, The American Board of Emergency Medicine, The American Board of Family Medicine, The American Board of Internal Medicine, The American Board of Medical Genetics, The American Board of Neurological Surgery, The American Board of Nuclear Medicine, The American Board of Obstetrics and Gynecology, The American Board of Ophthalmology, The American Board of Orthopaedic Surgery, The American Board of Otolaryngology, The American Board of Pathology, The American Board of Pediatrics, The American Board of Physical Medicine and Rehabilitation, The American Board of Plastic Surgery, The American Board of Preventive Medicine, The American Board of Psychiatry and Neurology, The American Board of Radiology, The American Board of Surgery, The American Board of Thoracic Surgery, and The American Board of Urology.

12.　Defendant ABMS and these 24 corporations are currently imposing the ABMS MOC® program against physicians.

13.　In addition, Defendant ABMS has acted in concert with The Joint Commission, formerly the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), a private company that accredits more than 20,000 health care organizations and hospitals, including the Somerset Medical Center (SMC) in Somerville, New Jersey, to require formal recertification as a condition of having

medical staff privileges.

14. In November 2009 and subsequently, Defendant ABMS and several of the foregoing 24 corporations obtained agreement by The Joint Commission that hospitals must enforce requirements against physicians for renewal of their medical staff privileges, and that these requirements should include some or all of Defendant's ABMS MOC® program.

15. To comply with The Joint Commission's requirements, many hospitals impose parts or all of Defendant's ABMS MOC® program against physicians as a condition of having hospital medical staff privileges, and exclude qualified physicians simply because they do not participate in the ABMS MOC® program.

16. In addition, Defendant ABMS has acted in concert with other groups to induce health insurers to "use Board Certification by an ABMS Member Board as an essential tool to assess physician credentials within a given medical specialty."[1]

17. There is no benefit to patient care from Defendant's ABMS MOC® recertification program.

18. Illustrating how recertification does not reflect medical skill or quality of care for patients, a co-conspirator of Defendant ABMS even offers ten years of recertification in exchange for a substantial cash payment in lieu of an

---

[1] http://certificationmatters.org/faqs.aspx (viewed April 23, 2013).

6

examination.[2]

19. Every State has one or more official medical boards authorized by law, and accountable to the public, to determine the fitness of physicians to practice medicine.

20. A patient has the right to seek the medical care of any physician duly licensed to practice medicine in the State where care is to be provided.

21. Many patients who are hospitalized on an emergency basis wish to be seen and treated by their own primary care physician.

22. Yet Defendant ABMS and its foregoing co-conspirators, by agreeing to impose burdensome recertification through ABMS MOC® as a condition of maintaining hospital medical staff privileges, interfere with access by hospitalized patients to their preferred physicians.

23. It is contrary to public policy for ABMS, as a private entity lacking in public accountability and transparency, to impose its own professional recertification requirements as a condition for patients to have access to physicians at hospitals.

24. Defendant's ABMS MOC® program imposes far greater burdens than any analogous program in any other profession, and surveys demonstrate that an overwhelming majority of physicians – perhaps more than 90% – feel that this program is unjustified.

---

[2] http://www.abpath.org/VolRecertBofI.pdf (viewed April 23, 2013).

25. There is no evidence that Defendant's ABMS MOC® program advances any legitimate goal for patient care.

26. The primary purpose of the implementation of ABMS MOC® is to enrich the executives at ABMS and at the corporations with which ABMS has the foregoing agreements.

### The Relevant Market

27. The relevant service market consists of medical care provided by physicians to hospitalized patients.

28. The relevant geographic market is nationwide.

### Exclusion of an AAPS Member from Somerset Medical Center (SMC)

29. Defendant ABMS's foregoing agreements and actions resulted in the unjustified exclusion of a physician member of Plaintiff AAPS ("J.E.") from the medical staff at SMC, a hospital located in Somerville, New Jersey.

30. Physician J.E. had been on the SMC medical staff to treat patients there for twenty-nine (29) years.

31. J.E. had been board certified by The American Board of Family Practice, which subsequently changed its name to The American Board of Family Medicine ("ABFM").

32. In 2011, SMC refused to allow J.E. to remain on its medical staff unless he complied with an extremely burdensome and impractical recertification procedure under the ABMS MOC®.

33. ABFM is one of the 24 corporations identified above that has agreed

with Defendant ABMS to implement ABMS MOC®.

34. Although J.E. had been fully certified in good standing with the predecessor to ABFM, Defendant's agreement with ABFM required imposing the following extremely burdensome requirements for recertification under ABMS MOC®:

- Completion of fifty (50) MC-FP points (acquired by doing modules)
- Minimum of 1 Part II Module (SAM)
- Minimum of 1 Part IV Module (PPM or approved alternative)
- One (1) additional module of [his] choice (Part II or Part IV)
- Completion of one hundred fifty (150) credits of acceptable CME (minimum 50% Division I), acquired in last three (3) years
- Compliance with ABFM Guidelines for Professionalism, Licensure, and Personal Conduct which includes holding a currently valid, full and unrestricted license to practice medicine in the United States or Canada
- Submission of three (3) MC-FP Process Payments; one (1) payment at the start of each module
- Submission of application and accompanying full examination fee for the MC-FP Examination
- Successful completion of the MC-FP Examination[3]

35. The foregoing requirements demand far in excess of 100 hours for a typical physician, with the possibility of an unjustified rejection of recertification for reasons having no proven connection with patient care.

36. The foregoing requirements further impose many thousands of dollars in fees and travel expenses.

37. The foregoing requirements take physicians away from providing care for patients.

38. In addition, the ABMS has entered into agreements with many of the

---

[3] https://www.theabfm.org/moc/index.aspx (viewed April 23, 2013).

9

above-referenced 24 specialty organizations to require even more expenditures of time and money by physicians. According to an email sent to physicians by the American Board of Internal Medicine (ABIM) on or about April 6, 2013, Defendant "ABMS is requiring more frequent participation in MOC of all board certified physicians."

39. Like many other AAPS physician members, J.E. spends a substantial percentage of his time providing charity care to patients who would not otherwise have access to medical care.

40. J.E. manages and works in a standalone medical charity clinic for a substantial part of each week.

41. Requiring J.E. to spend hundreds of hours on requirements for recertification under ABMS MOC® would result in an hour-for-hour reduction in his availability to provide medical care to his many charity patients, who recently surpassed 30,000 patient visits in total number.

42. Patients of J.E. typically lack any alternate means of obtaining comparable medical care.

43. J.E. continued to serve his charity patients rather than comply with the foregoing burdens of recertification demanded by Defendant's agreement with ABFM to implement ABMS MOC®.

44. Effective June 24, 2011, SMC excluded J.E. from its medical staff, as a result of Defendant ABMS's agreements with other entities to require the ABMS MOC® program.

45. Patients are now denied the benefit of being evaluated and treated by J.E. when taken by emergency to SMC.

46. There is no value to patients in the completion of the above litany of onerous recertification requirements.

47. The lack of any genuine value of ABMS MOC® as a measure of professional skill or competence is demonstrated by how ABMS itself selected and appointed as its new President/CEO in 2012 someone who was "Not Meeting MOC Requirements," but had an exemption not available to younger physicians.[4]

48. J.E. is unquestionably a first-rate physician who continues to practice in good standing in New Jersey.

49. Whether J.E. purchases and complies with ABMS MOC®, as implemented by the ABFM, has no bearing on his medical skills as a physician.

50. Like J.E., other members of AAPS face imminent injury from Defendant's agreements to impose ABMS MOC®, and Defendant's concerted actions to require physicians to purchase and comply with its proprietary product.

51. Defendant's agreements and concerted actions limit the supply of physicians available to hospitalized patients, thereby denying patients care by their choice of physicians.

---

[4] http://www.abms.org/News_and_Events/Media_Newsroom/Releases/release_DrNoraAppointedNewCEO_04112012.aspx (viewed March 4, 2013).
https://application.abpn.com/verifycert/verifyCert_details.asp?p=125345 (viewed March 4, 2013).

**Defendant ABMS's Pecuniary Interest**

52. Defendant and its co-conspirators have a substantial pecuniary interest in requiring physicians to purchase their products in the ABMS MOC® program, in order to be allowed on medical staffs at hospitals.

53. The publicly available IRS Form 990 sets forth the immense self-enrichment by executives at Defendant ABMS and its co-conspirators which results in large part from imposition of their recertification requirements:

| Executive | "Nonprofit" Annual Compensation |
|---|---|
| Kevin B. Weiss, ABMS Executive | $562,456 (2011) |
| James Puffer, ABFM Executive | $727,885 (2011) |
| Christine Cassel, American Board of Internal Medicine (ABIM) Executive | $794,852 (2010) |

ABMS Form 990 (2011), Part II, p. 2; ABFM Form 990 (2011), Part VII, p. 7; ABIM Form 990 (2011), Sched. 3, p. 2.

54. Defendant ABMS has acted with a pecuniary interest in persuading and coercing The Joint Commission to impose standards for recertification used by hospitals, within the meaning of *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988).

55. While Plaintiff AAPS supports education, voluntary initial certification, and lifelong learning through clinical experience, AAPS challenges Defendant's agreements and actions in restraining trade based on its proprietary recertification product and Defendant's false and misleading statements about

12

physicians who provide charity care rather than spend substantial time and expense for Defendant's enrichment.

## COUNT I
### (Restraint of Trade in Violation of Section 1 of the Sherman Act)

56. Plaintiff AAPS incorporates herein all statements and allegations contained in this Complaint.

57. Defendant ABMS has restrained trade by seeking and obtaining agreements with 24 other corporations to impose formal recertification requirements as part of Defendant's ABMS MOC® program.

58. Defendant ABMS has further restrained trade by seeking and obtaining agreement by The Joint Commission to require enforcement by hospitals of formal recertification requirements.

59. Defendant ABMS has restrained trade by inducing health insurance companies and plans to exclude physicians who do not purchase and comply with Defendant's ABMS MOC® program.

60. Defendant ABMS has also restrained trade by applying its ABMS MOC® to require recertification by younger physicians *while exempting* older physicians, thereby increasing barriers to entry and reducing competition.

61. Defendant has further restrained trade by acting in concert with the above-referenced 24 corporations to seek an endorsement by the influential Federation of State Medical Boards (FSMB) of "maintenance of licensure" (MOL), in order to impose Defendant's ABMS MOC® as a requirement of

13

licensure by state medical boards.

62. In 2011, the FSMB formed an MOL Implementation Group that has acted in concert with Defendant ABMS in order to require parts of Defendant's ABMS MOC® program as a condition of licensure by state medical boards.

63. Defendant's actions have no legitimate purpose, and reduce the supply of physicians available to treat patients in various settings.

64. Defendant's actions have been undertaken with a common design and understanding to exclude from the relevant market physicians, including members of Plaintiff AAPS, who choose not to spend time and money on Defendant's ABMS MOC® program.

65. Defendant's actions injured and continue to injure competition by causing anticompetitive effects within the relevant market for services provided by physicians, thereby limiting patients' access to their own physicians.

66. Defendant's actions have reduced the availability of physicians in the relevant market, to the detriment of their patients.

67. Defendant's agreements and concerted actions imposed, and continue to impose, an unreasonable restraint of trade.

68. Defendant has acted in concert to restrain trade within the meaning of *Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201 (2010).

69. Defendant's agreements and concerted actions are a *per se* violation of Section 1 of the Sherman Act because they are plainly anticompetitive, like a group boycott of a supplier; Defendant's foregoing actions tend to restrict

competition and decrease output with respect to medical services in the relevant market.

70. In the alternative, Defendant's agreements and concerted actions violate Section 1 of the Sherman Act under the rule of reason, by unreasonably restricting the ability of members of Plaintiff to provide services in the relevant market.

71. *Noerr-Pennington* immunity does not protect Defendant's actions.

72. Patients themselves are highly unlikely to sue for their losses due to this antitrust violation, so there is no potential for duplicative recovery or complex apportionment of damages.

73. Plaintiff AAPS seeks a declaratory judgment that Defendant has violated Section 1 of the Sherman Act.

74. Plaintiff AAPS seeks an injunction against Defendant to prevent recurrence of its restraint of trade as alleged above.

75. Plaintiff AAPS seeks a refund of fees paid by its members in connection with Defendant's ABMS MOC® program, trebled under 15 U.S.C. § 15(a).

76. Plaintiff AAPS seeks attorneys' fees under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.

## COUNT II
**(Negligent Misrepresentation)**

77. Plaintiff AAPS incorporates herein all the foregoing statements and

allegations.

78. Defendant ABMS states on one of its websites that:

doctors who are Board Certified by an ABMS Member Board and participate in the ***ABMS Maintenance of Certification® program*** are voluntarily part of a rigorous process that continually assesses and ***enhances their medical knowledge, judgment, professionalism, clinical techniques and communication skills***.[5]

79. Defendant ABMS further states that "Doctors who are Board Certified meet nationally recognized standards for education, knowledge and experience in a specific medical specialty, ***so you can count on quality patient care***."[6]

80. Defendant uses phrases like "Not Meeting MOC Requirements" to describe physicians who decline Defendant's product.

81. The foregoing statements create the false impression that Defendant's ABMS MOC® is indicative of the medical skills of physicians, and that as a result physicians who decline to purchase Defendant's product are likely to be less competent.

82. Defendant misleads the public with its website by inviting patients to search on the names of individual physicians to see if they have complied with Defendant's ABMS MOC® program, thereby falsely implying that physicians who decline to participate or who do not fully complete the program are somehow

---

[5] http://www.certificationmatters.org/about-abms.aspx (viewed April 23, 2013, emphasis added).

[6] http://certificationmatters.org/faqs.aspx (viewed April 23, 2013, emphasis added).

less competent physicians.[7]

83. In fact, the ABMS MOC® program has no significant correlation with the medical skills of physicians.

84. Defendant's ABMS MOC® program is designed primarily to enrich Defendant and its own executives, rather than any genuine attempt to improve quality of care for patients.

85. Many of the questions asked of physicians as part of Defendant's ABMS MOC®, for which physicians must provide the preferred answers in order to be recertified, have no relevance to the quality of care that the physician provides, and there is no meaningful public accountability or transparency as to whether the answers preferred by Defendant are really the best answers.

86. Defendant has deceived physicians (including members of Plaintiff AAPS) and the public by pretending that Defendant's ABMS MOC® measures the medical skills and competence of a physician.

87. Defendant has never had any reasonable basis for believing its foregoing statements to be true, and has been negligent in making them.

88. Physicians, including members of Plaintiff AAPS, have been compelled by Defendant's conduct to rely on its foregoing statements in order to remain on hospital medical staffs.

89. Physicians, including members of Plaintiff AAPS, have justifiably

---

[7] https://www.certificationmatters.org/is-your-doctor-board-certified/search-now.aspx (viewed April 23, 2013).

17

relied on the foregoing statements by Defendant.

90. Members of Plaintiff AAPS have been injured as a result.

91. The public has also been injured as a result, in the denial of their ability to be seen at hospitals by non-recertified physicians of their choice.

92. Plaintiff AAPS seeks an injunction ordering Defendant to cease and desist making false statements about its ABMS MOC® program, including its statements quoted above.

93. Plaintiff AAPS seeks an order requiring Defendant ABMS to refund the fees and expenses paid by AAPS members for participation in recertification associated with Defendant's ABMS MOC® program.

**WHEREFORE, Plaintiff AAPS prays**:

### As to Count I

That this Court adjudge and decree that Defendant has engaged in an unlawful conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, that Defendant cease and desist from seeking any reliance by hospitals, The Joint Commission, health insurers, the Federation of State Medical Boards, state medical boards themselves, and the public on Defendant's ABMS MOC® as a measure of quality, that any agreements entered into by Defendant to implement or require ABMS MOC® are declared null and void, that Defendant refund treble fees it has received directly or indirectly from AAPS members in connection with the ABMS MOC®, that Plaintiff recover the cost of this suit together with reasonable attorneys' fees, and such other relief as the Court may deem

18

appropriate.

## As to Count II

That this Court adjudge and decree that Defendant has engaged in negligent misrepresentations about its ABMS MOC®, that Defendant cease and desist making false or misleading statements in promoting it, that Defendant take down from its websites all false or misleading statements identified in this Complaint, that Defendant cease and desist identifying publicly which physicians have recertified and which ones have not, that Defendant refund fees it has received directly or indirectly from AAPS members in connection with ABMS MOC®, and such other relief as the Court may deem appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial pursuant to FED. R. CIV. P. 38(b) for all issues triable by jury.

Respectfully submitted,

s/ Andrew L. Schlafly

Andrew L. Schlafly (AS4533)
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
Phone:  (908) 719-8608
Fax:  (908) 934-9207
Email: aschlafly@aol.com

Attorney for Plaintiff
Association of American Physicians &
Surgeons, Inc. (AAPS)

Dated: April 23, 2013

## **CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

I, Andrew L. Schlafly, counsel for Plaintiff Association of American Physicians & Surgeons, Inc. ("AAPS"), do certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or governmental administrative proceeding.

s/ Andrew L. Schlafly

Andrew L. Schlafly (AS4533)
Attorney for Plaintiff AAPS

Dated: April 23, 2013