# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., | No. 3:13-CV-2609-MLC-LHG |
| Plaintiff, | **DOCUMENT FILED ELECTRONICALLY** |
| v. | |
| AMERICAN BOARD OF MEDICAL SPECIALTIES, | **RETURN DATE:** July 15, 2013 |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

## BRIEF OF DEFENDANT AMERICAN BOARD OF MEDICAL SPECIALTIES IN SUPPORT OF ITS MOTION TO DISMISS OR TRANSFER

Jack R. Bierig
Michael P. Doss
Steven J. Horowitz
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (Fax)
jbierig@sidley.com
mdoss@sidley.com
shorowitz@sidley.com

Arnold B. Calmann
Jeffrey S. Soos
Jakob B. Halpern
**SAIBER LLC**
One Gateway Center
Newark, NJ 07102-5311
(973) 622-3333
(973) 622-3349 (Fax)
abc@saiber.com
js@saiber.com
jbh@saiber.com

*Attorneys for Defendant American Board of Medical Specialties*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................5

      A.    ABMS and the Certification Process ..........................................5

      B.    AAPS and Its Members ...............................................................8

      C.    AAPS's Substantive Allegations ...............................................9

ARGUMENT ...................................................................................................11

    Legal Standard Applicable to the Motions ......................................11

    POINT I:  This Case Should Be Dismissed For Improper Venue Or Transferred
    To The Northern District Of Illinois................................................11

      A.    Venue is Not Proper Under § 12 of the Clayton Act Because ABMS Does
      Not Transact Business in New Jersey ........................................12

      B.    AAPS Cannot Rely on 28 U.S.C. § 1391 to Establish Venue, And Venue
      Would Not Lie in New Jersey Under That Statute in Any Event..............14

      C.    Even If Venue Were Proper in This District, This Court Should Transfer
      the Case to the Northern District of Illinois under 28 U.S.C. § 1404(a) ...16

    POINT II:  The Complaint Should be Dismissed for Failure to State a Claim Under
    Rule 12(b)(6).......................................................................................17

      A.    Plaintiff Has Failed to Allege Facts That Show a Restraint of Trade........17

      B.    Any Harm to AAPS or its Members is the Result of Decisions by
      Hospitals or Other Bodies—and Does Not Constitute Antitrust Injury ....22

      C.    AAPS's Negligent Misrepresentation Claim Should be Dismissed ..........26

CONCLUSION.................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n,*
    516 F. Supp. 378 (S.D.N.Y. 1981)................................................................14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..........................................................................................11

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)...........................................................................10, 11, 20

*Bockman v. First Am. Marketing Corp.,*
    459 F. App'x 157 (3d Cir. 2012) .................................................................2, 12

*Broadcom Corp. v. Qualcomm Inc.,*
    501 F.3d 297 (3d Cir. 2007).............................................................................23

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
    429 U.S. 477 (1977).........................................................................................23

*Burtch v. Milberg Factors, Inc.,*
    662 F.3d 212 (3d Cir. 2011).............................................................................25

*Castrol Inc. v. Pennzoil Co.,*
    987 F. 2d 939 (3d Cir. 1993)............................................................................27

*City of Pittsburgh v. West Penn Power Comp.,*
    147 F.3d 256 (3d Cir. 1998).............................................................................24

*Clamp-All Corp. v. Cast Iron Soil Pipe Institute,*
    851 F.2d 478 (1st Cir. 1988)............................................................................24

*Coastal Outdoor Advertising v. Township of Union,*
    676 F. Supp. 2d 337 (D.N.J. 2009) .................................................................27

*Consolidated Metal Products, Inc. v. American Petroleum Institute,*
    846 F.2d 284 (5th Cir. 1988) ...........................................................................24

*Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.,*
    No. 12-cv-36, 2012 WL 5387356 (N.D. Miss. Nov. 1, 2012)................................13

*County of Tuolumne v. Sonora Community Hospital,*
    236 F.3d 1148 (9th Cir. 2001) .........................................................................25

*Cumberland Truck Equipment Co. v. Detroit Diesel Corp.,*
    401 F. Supp. 2d 415 (E.D. Pa. 2005) ..............................................................15

*Daniel v. American Board of Emergency Medicine*,
    428 F.3d 408 (2d Cir. 2005)..................................................................13, 16

*DeGregorio v. American Board of Internal Medicine*,
    844 F. Supp. 186 (D.N.J. 1994) ...........................................................19, 26

*DeGregorio v. American Board of Internal Medicine*,
    No. 92-cv-4924, 1993 WL 719564 (D.N.J. Oct. 1, 1993) ......................6, 19, 20, 26

*Edwards v. A.H. Cornell & Son, Inc.*,
    610 F.3d 217 (3d Cir. 2010)..................................................................8, 11

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
    843 N.E.2d 327 (Ill. 2006) ...................................................................29

*Gibbs v. Massey*,
    No. 07-cv-3604, 2009 WL 838138 (D.N.J. Mar. 26, 2009) ....................30

*Golf City, Inc. v. Wilson Sporting Goods Co.*,
    555 F.2d 426 (5th Cir. 1977) ...............................................................14

*Great Cent. Ins. Co. v. Ins. Servs. Office, Inc.*,
    74 F.3d 778 (7th Cir. 1996) ................................................................30

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)..................................................................15

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994).....................................................28

*Howard Hess Dental Labs., Inc. v. Dentsplay Int'l, Inc.*,
    516 F. Supp. 2d 324 (D. Del. 2007).....................................................14

*In re Automotive Refinishing Paint Antitrust Litig.*,
    358 F.3d 288 (3d Cir. 2004)..................................................................14, 23

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995)....................................................................16

*Jung v. Ass'n of American Medical Colleges*,
    300 F. Supp. 2d 119 (D.D.C. 2004) .....................................................14

*Karu v. Feldman*,
    574 A.2d 420 (N.J. 1990)......................................................................29

*Kaufman v. i-Stat Corp.*,
    754 A.2d 1188 (N.J. 2000)....................................................................29

*Leroy v. Great Western United Corp.*,
443 U.S (1979) ........................................................................................15

*LG Electronics, Inc. v. First Int'l Computer, Inc.*,
138 F. Supp. 2d 574 (D.N.J. 2001) ........................................................17

*Marrese v. American Academy of Orthopaedic Surgeons*,
No. 91-1366, 1992 WL 246906 (7th Cir. Oct. 1, 1992) ........................21

*Mass. School of Law v. American Bar Ass'n*,
107 F.3d 1026 (3d Cir. 1997) ..........................................................22, 23

*Mathews v. Lancaster General Hosp.*,
87 F.3d 624 (3d Cir. 1996) ....................................................................23

*McDaniel v. Appraisal Institute*,
117 F.3d 421 (9th Cir. 1997) ..........................................................22, 24

*McGlinchy v. Shell Chemical Co.*,
845 F.2d 802 (9th Cir. 1988) ................................................................23

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004) ....................................................................14

*NCR Credit Corp. v. Ye Seekers Horizon, Inc.*,
17 F. Supp. 2d 317 (D.N.J. 1998) ........................................................17

*Oksanen v. Page Memorial Hosp.*,
945 F.2d 696 (4th Cir. 1991) ................................................................20

*One World Botanicals v. Gulf Coast Nutritionals*,
987 F. Supp. 317 (D.N.J. 1997) ............................................................17

*Patel v. American Board of Psychiatry & Neurology, Inc.*,
No. 89-cv-1751, 1989 WL 152816 (N.D. Ill. Nov. 21, 1989) ..........18, 19

*Peel v. Attorney Registration & Disciplinary Comm'n*,
496 U.S. 91 (1990) ..................................................................................5

*Pension Benefit Guar. Corp. v. White Consol. Industries*,
998 F.2d 1192 (3rd Cir. 1993) ................................................................2

*Poindexter v. American Board of Surgery, Inc.*,
911 F. Supp. 1510 (N.D. Ga. 1994) ..........................................19, 24, 25

*S.C. Johnson & Son, Inc. v. Gillette Co.*,
571 F. Supp. 1185 (N.D. Ill. 1983) ........................................................17

*Sanderson v. Spectrum Labs, Inc.*,
227 F. Supp. 2d 1001 (N.D. Ind. 2000) ........................................................12, 13

*Sanjuan v. American Bd. of Psychiatry & Neurology*,
40 F.3d 247 (7th Cir. 1994) ........................................................................21

*Santana Products v. Bobrick Washroom Equipment*,
401 F.3d 123 (3d Cir. 2005)..................................................................17, 18

*Santiago v. Warminster Twp.*,
629 F. 3d 121 (3d Cir. 2010)........................................................................11

*Schachar v. American Academy of Ophthalmology*,
870 F.2d 397 (7th Cir. 1989) ......................................................................19

*Syncsort Inc. v. Sequential Software, Inc.*,
50 F. Supp. 2d 318 (D.N.J. 1999) ..............................................................28

*TekDoc Servs., LLC v. 3i-Infotech Inc.*,
No. 09-cv-6573, 2013 WL 2182565 (D.N.J. May 20, 2013)....................29

*United States v. Scophony Corp.*,
333 U.S. 795 (1948)......................................................................................13

*Wyndham Hotels & Resorts, LLC v. Northstar Mt. Olive, LLC*,
No. 10-cv-2583, 2013 WL 1314747 (D.N.J. Mar. 28, 2013) ................29

STATUTES

15 U.S.C. § 1 ............................................................................................ passim

15 U.S.C. § 15(a) ...........................................................................................23

15 U.S.C. § 22 ........................................................................................... passim

28 U.S.C. § 1367 ........................................................................................5, 26

28 U.S.C. § 1391 ..........................................................................12, 14, 15, 16

28 U.S.C. §1404(a) ........................................................................4, 12, 16, 30

42 U.S.C. § 1395w-4........................................................................................2, 26

OTHER AUTHORITIES

42 C.F.R. § 414.90 (2012) ..............................................................................26

75 Fed. Reg. 73545 (2010) .........................................................................3, 26

## INTRODUCTION

Plaintiff Association of American Physicians & Surgeons ("AAPS") contends that the development and promotion of the Maintenance of Certification (or "MOC") program by defendant American Board of Medical Specialties ("ABMS") constitutes a violation of § 1 of the Sherman Act and involves negligent misrepresentations in violation of state law.  But this Court is an improper venue for the adjudication of AAPS's claims since ABMS does not transact business in New Jersey, and the activities giving rise to this suit did not occur here. Substantively, moreover, the Complaint fails to state a cause of action.  AAPS does not and cannot allege that the MOC program imposes *any* restraint of trade or is the proximate cause of any injury to AAPS—let alone the kind of antitrust injury that is actionable under the Sherman Act.  Further, the Complaint alleges no misrepresentation by ABMS that would violate state law. Thus, for the reasons set forth in this Brief, the case should be dismissed or transferred to the United States District Court for the Northern District of Illinois.

The MOC program at issue in this case requires each physician who has chosen to be certified in a medical specialty by one of the twenty-four Member Boards of ABMS to satisfy four conditions in order to remain certified:

1. <u>Licensure and Professional Standing</u>: Maintain a valid, unrestricted medical license and adhere to guidelines of the Member Board calling for professionalism and honorable personal conduct;

2. <u>Lifelong Learning and Self-Assessment</u>: Keep up-to-date in the physician's medical specialty by devoting a specified number of hours to taking Continuing Medical Education courses, and participate in other educational and self-assessment activities required by the Member Board;

3. <u>Cognitive Expertise</u>: Periodically take and successfully complete an examination that is prepared by the certifying Member Board; and

4. <u>Performance in Practice</u>: Submit to periodic evaluations regarding the physician's care, and identify and apply strategies to further improve the care that the physician provides.

*See generally* Certification FAQs, http://certificationmatters.org/faqs.aspx (last visited June 13,

2013), Ex. A to Declaration of Jakob B. Halpern ("Halpern Decl."); ABFM Maintenance of

Certification for Family Physicians, https://www.theabfm.org/moc/index.aspx (last visited June

13, 2013), Ex. B to Halpern Decl.; Compl. ¶ 34 (setting forth MOC requirement of ABMS

Member Board, American Board of Family Medicine).[1]

As AAPS acknowledges, no one is required as a condition of medical licensure to be

initially certified by an ABMS Member Board or to participate in the MOC program.  *See, e.g.*,

*id.* ¶ 20 ("A patient has the right to seek the medical care of any physician duly licensed to

practice medicine in the State where care is to be provided.").  Rather, a physician's participation

in, and compliance with, the MOC program provides information for hospital credentialing

committees, for managed care plans and other payers, and for patients regarding whether that

physician satisfies the requirements of the relevant ABMS Member Board.  Thus, the MOC

program facilitates informed decision-making by recipients of the information and provides a

mechanism for physicians to demonstrate their credentials in an efficient manner.

Notably, both Congress and the Centers for Medicare & Medicaid Services ("CMS")

have recognized the value of the MOC program.  In particular, Congress has provided for

Medicare incentive payments to physicians who participate in the program.  *See* 42 U.S.C.

§§ 1395w-4(m)(7)(B)(ii)(I), 1395w-4(m)(7)(C)(i) (defining "Maintenance of Certification

---

[1] For purposes of a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must accept as true the well-pleaded factual allegations in the Complaint but may also consider "public documents" or "undisputedly authentic document[s]" on which plaintiff's claims are based.  *Pension Benefit Guar. Corp. v. White Consol. Industries*, 998 F.2d 1192, 1196 (3rd Cir. 1993).  Here, AAPS has cited to and relied on the documents attached as Ex. A and Ex. B to the Declaration of Jakob B. Halpern.  *See* Compl. ¶¶ 16 n.1, 34 n.3.  Thus, it is proper for the Court to consider them.  For purposes of the motion to dismiss for improper venue under Rule 12(b)(3), this Court must generally accept the Complaint's allegations, but not if "those allegations are contradicted by the defendant['s] affidavits." *Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012).

Program" to include a "qualified American Board of Medical Specialties Maintenance of

Certification program"), Ex. C to Halpern Decl., at 53-54.  CMS has interpreted these statutes as

"providing an additional incentive for eligible professionals who are actively pursuing activities

involved in a continuous assessment program, such as a qualified ABMS Maintenance of

Certification Program."  75 Fed.  Reg. 73545 (2010), Ex. D to Halpern Decl.  For much the same

reasons that Congress provided incentives for physicians to participate in the MOC program,

numerous hospitals and other credentialing authorities have chosen to consider participation in

the program as part of their decision-making process.  *See* Compl. ¶¶ 14-16.

Despite the congressionally recognized benefits of lifelong physician learning, periodic

examination, and high professional standards, some physicians would prefer not to participate in

MOC.  These physicians have, by definition, received initial certification from an ABMS

Member Board because only certified physicians would have any need to maintain certification.

Apparently, these physicians would like to be able to hold themselves out as "board certified"

forever—without having to spend the money and devote the time needed to satisfy the

requirements that are designed to give some assurance to the public that the physician has kept

current with relevant developments.  *See, e.g.*, *id.* ¶ 1, 24, 43.  In other words, these physicians

want to retain certification by an ABMS Member Board without meeting the standards that

ABMS and its Member Boards have adopted.

At least some of these physicians are members of plaintiff AAPS.  They resent what they

regard as interference with "the practice of private medicine."  *See id.* ¶ 9.  They object to the

time and effort that they must spend to maintain certification by an ABMS Member Board.  *See*

*id.* ¶¶ 1, 3, 35-37, 41.  In their opinion, "(t)here is no benefit to patient care from" the MOC

program.  *Id.* ¶ 17; *see also id.* ¶¶ 10, 25, 46, 47, 49, 63.  They characterize the MOC program as "a money-making, self-enrichment scheme" of ABMS.  *Id.* ¶ 1; *see also id.* ¶¶ 26, 52-54.

Based on some of its members' objection to the MOC program, AAPS has sued ABMS in this Court alleging that the program (a) violates §1 of the Sherman Act, 15 U.S.C. § 1, and (b) involves negligent misrepresentation in violation of state law.  AAPS is, of course, entitled to its opinion about MOC, and its members can choose to participate or not participate in the MOC program as they see fit.  But neither the views of AAPS nor the desire of some of its members to retain certification by a Member Board without complying with the requirements of the MOC program can give rise to a lawsuit that states a cause of action under the antitrust laws or the New Jersey law of negligent misrepresentation.

As a preliminary matter, this Court is not an appropriate forum for adjudication of plaintiff's claim.  ABMS is not incorporated or headquartered in New Jersey, and it does not transact business here.  Thus, venue does not lie in this Court.  Even if venue were proper, this case should, as a matter of justice and for the convenience of the parties, be transferred to the Northern District of Illinois pursuant to 28 U.S.C. §1404(a).

Moreover, on the merits, the Complaint should be dismissed pursuant to Federal Rule 12(b)(6).  With respect to plaintiff's antitrust claim, there can be no unlawful "restraint of trade" where plaintiff has alleged no facts to suggest that ABMS's voluntary MOC program imposes any restraint on AAPS, AAPS's members, or anyone else.  To be sure, plaintiff conclusorily alleges ABMS engaged in an unlawful agreement with The Joint Commission and with unspecified "other groups."  Compl. ¶¶ 13-16.  Critically, however, AAPS has not alleged any concrete facts to support that unwarranted conclusion.  Further, even accepting as true the well-pleaded factual allegations of the Complaint, any harm that AAPS's members may have suffered

4

from the MOC program is the result of independent decisions of hospitals and payers to require compliance with the MOC program—not the conduct of ABMS or any Member Board.  And the harm that plaintiff has alleged does not constitute antitrust injury in any event.

As for AAPS's allegation of negligent misrepresentation, this Court should not exercise jurisdiction over this state-law claim under 28 U.S.C. § 1367 if the federal antitrust claim is dismissed.  On the merits, that claim is based entirely on statements that are, on their face, truthful (*e.g.*, stating whether a physician is in fact board certified) or that cannot constitute misrepresentation as a matter of law (*e.g.*, stating that "you can count on quality care"). Moreover, the tort of negligent misrepresentation requires a showing of the plaintiff's detrimental reliance.  Yet the Complaint does not include a single alleged fact to suggest that AAPS itself or its members were actually deceived by ABMS's promotion of the MOC program.

## BACKGROUND

### A.      ABMS and the Certification Process

ABMS is an Illinois not-for-profit corporation headquartered in Chicago.  Compl. ¶¶ 1, 5. It is the umbrella organization for twenty-four Member Boards in various medical specialties. *Id.* ¶ 11 (listing the twenty-four ABMS Member Boards).  Each of these Member Boards certifies physicians in the medical specialty covered by the Member Board if the physician voluntarily seeks certification and completes an accredited medical residency program in the specialty, passes an examination administered by the Member Board, and otherwise complies with the Member Board's requirements for certification.  *See generally* About Board Certification, http://www.certificationmatters.org/about-board-certified-doctors/about-board-certification.aspx (last visited June 13, 2013); *see also Peel v. Attorney Registration & Disciplinary Comm'n*, 496 U.S. 91, 102 n.11 (1990).

As a matter of licensure in most states, any licensed physician can practice in any medical specialty—from family medicine to neurosurgery. *See* Halpern Decl. Ex. A; Compl. ¶¶ 19-20. Certification by a Member Board is a voluntary process that allows physicians to demonstrate and communicate to the public their commitment to lifelong learning in a specific medical specialty, as well as their knowledge and expertise in that area. Compl. ¶ 79. It is a signal to the public and to health care decision-makers that a given physician has met applicable MOC criteria in a particular medical specialty. *See* Halpern Decl. Ex. A. Indeed, certification is relied upon by health care institutions, insurers, physicians, and patients as a tool to determine a physician's credentials within a given specialty. *See id.*

Originally, a physician who was certified by an ABMS Member Board was certified for life. *See* What Board Certification Means, http://www.abms.org/About_Board_Certification/means.aspx (last visited June 13, 2013). However, beginning in the 1970s and 1980s, ABMS and its Member Boards recognized that the state-of-the-art in each medical specialty evolves rapidly and that a physician's knowledge of, and skills in, a particular specialty may deteriorate over time. ABMS and its Member Boards therefore instituted a program for recertification. *See, e.g.*, *DeGregorio v. American Board of Internal Medicine*, No. 92-cv-4924, 1993 WL 719564, at *2 (D.N.J. Oct. 1, 1993) ("[I]n early 1987, [American Board of Internal Medicine] announced that, as of 1990, all newly issued certificates would be valid for ten years only, thus requiring recertification at ten year intervals thereafter."). Subsequently, ABMS and its Member Boards recognized that it was not sufficient to take a test every ten years to demonstrate that a physician was keeping up with developments in the practice of medicine. So ABMS and its Member Boards transitioned from requiring periodic recertification to requiring physicians to demonstrate

that they were complying with the requirements of MOC on an ongoing basis.  *See* ABMS

Maintenance of Certification®, http://www.abms.org/Maintenance_of_Certification/

ABMS_MOC.aspx (last visited June 13, 2013).

  The basic objective of the MOC program is to provide assurance to patients, hospitals,

and insurers that a physician is staying up-to-date with advances in the relevant specialty and

continually enhancing the physician's knowledge in the specialty.  *See* Halpern Decl. Ex. A.  In

other words, the MOC program is intended to help ensure that a Member Board's certification of

a physician retains its meaning and value over time.

  MOC has four basic components.  First, MOC requires licensure and professional

standing.  To maintain certification, a physician must have a valid, unrestricted medical license

and adhere to guidelines of the Member Board calling for professionalism and honorable

personal conduct.  *See* Compl. ¶ 34; Halpern Decl. Ex. B (requiring "continuous compliance with

the ABFM Guidelines for Professionalism, Licensure, and Personal Conduct").

  Second, MOC requires self-assessment and lifelong learning.  To meet this requirement,

a physician must regularly participate in educational and self-assessment activities that meet

specialty-specific standards set by each Member Board.  The American Board of Family

Medicine, for example, requires its diplomates to complete at least one Self-Assessment Module

and 150 credits of Continuing Medical Education.  *See* Compl. ¶ 34; Halpern Decl. Ex. B.

  Third, MOC requires cognitive expertise.  Physicians satisfy this component by passing

an examination that tests whether they have the up-to-date knowledge necessary to provide

quality care.  *See* Compl. ¶ 34; Halpern Decl. Ex. B (requiring "successful completion of the

MC-FP examination").

Finally, MOC includes a performance in practice component.   This component directs physicians to evaluate the care that they provide to their patients (through surveys) and to identify and apply strategies to improve that care.  For the American Board of Family Medicine, this means that the physician must complete the requisite number of Performance in Practice (or "PPM") modules for a given recertification cycle.  *See* Compl. ¶ 34; Halpern Decl. Ex. B.

The board certification process, of which the MOC program is a part, is entirely voluntary.  However, the program has been widely adopted and relied upon in the medical community.  For example, The Joint Commission, in connection with its hospital accreditation decisions, allegedly considers whether physicians with staff privileges comply with MOC. Compl. ¶ 13-14.[2]  (AAPS alleges that ABMS has acted "in concert with" The Joint Commission, *id.* ¶ 13, but the Complaint does not provide any facts to suggest anything other than an arms-length relationship of two independent private organizations, *see id.*)  That said, not all hospitals require physicians who seek medical staff privileges to comply with parts or all of the MOC program.  *Id.* ¶ 15.[3]

**B.      AAPS and Its Members**

AAPS is a membership organization of practicing physicians "in virtually all specialties." *Id.* ¶ 4.  It is incorporated in Indiana and headquartered in Arizona, and its membership includes at least some physicians practicing in New Jersey.  *Id.* ¶ 4.  AAPS's stated purpose is "safeguarding the practice of private medicine against interference."  *Id.* ¶ 9.

---

[2] AAPS conclusorily alleges—without any specific supporting factual allegations—that The Joint Commission *requires* MOC, but plaintiff's own allegations reveal that this is not so.  *See* Compl. ¶ 15 ("To comply with The Joint Commission's requirements, *many* hospitals impose *parts* or all of Defendant's ABMS MOC® program" (emphasis added)).

[3] For purposes of the motion to dismiss under Rule 12(b)(6), ABMS accepts as true the well-pleaded factual allegations of the Complaint.  It does not accept, however, conclusory statements made without a specific factual allegation.  *See, e.g.*, *Edwards v. A.H. Cornell & Son, Inc.*, 610 F.3d 217, 219 (3d Cir. 2010).

Some members of AAPS have been certified by ABMS Member Boards.  *See id.* ¶¶ 3, 9 (noting fees paid by AAPS members to Member Boards).  Interestingly, AAPS does not allege that the conduct of ABMS or its Member Boards with respect to *initial* certification is unlawful.  Instead, its challenge is limited to the criteria for MOC.  Apparently, AAPS members want to be able to claim to be board certified without making the investment of time and money required by the MOC program.

One physician who has chosen not to participate in the MOC program is an AAPS member referred to only as "J.E."  *Id.* ¶ 29.  J.E. is said to be a first-rate physician in good standing in New Jersey.  *Id.* ¶ 48.  Until recently, J.E. had been certified by the American Board of Family Medicine, and he had enjoyed staff privileges at Somerset Medical Center for twenty-nine years.  *Id.* ¶¶ 30-31.  In 2011, the Medical Center informed J.E. that he would lose his staff privileges unless he complied with the MOC program.  *Id.* ¶ 32.  In light of the time and expense required, J.E. chose not to participate in the program.  *Id.* ¶¶ 35-36, 41, 43.  Consistent with its earlier warning, Somerset Medical Center responded by excluding J.E. from its medical staff.  *Id.* ¶ 44.  As a result, although J.E. still manages a charity clinic and treats patients there and perhaps elsewhere, *id.* ¶ 40, he is unable to treat patients taken to Somerset for emergency care, *id.* ¶ 45.

AAPS suggests that J.E.'s story is a common one—that many hospitals have decided to deny staff privileges to physicians who have chosen not to meet the requirements of the MOC program.  *Id.* ¶ 1.  According to AAPS, the development and promotion of the MOC program constitute an unlawful restraint of trade in violation of § 1 of the Sherman Act, *id.* ¶¶ 56-76, and negligent misrepresentation in violation of state law, *id.* ¶¶ 77-93.

**C.     AAPS's Substantive Allegations**

With respect to its antitrust claim, AAPS's allegations are long on conclusions but devoid of specifics.  AAPS asserts that "ABMS has agreed with 24 separate corporations, and acted in

concert with a standard-setting organization, The Joint Commission, to compel physicians to spend enormous amounts of time and money to comply with" MOC requirements.  Compl. ¶ 1. Similarly, it avers that "ABMS and 24 separate corporations have agreed to impose on physicians a recertification program" known as MOC.  *Id.* ¶ 10.  In addition, it alleges that ABMS "has acted in concert with The Joint Commission . . . to require formal recertification as a condition of having medical staff privileges"—and that ABMS "and several of the foregoing 24 corporations obtained agreement by The Joint Commission that hospitals must enforce requirements" that "include some or all of Defendant's ABMS MOC® program."  *Id.* ¶¶ 13, 14. Finally, it charges that "ABMS has acted in concert with other groups to induce health insurers to 'use Board Certification by an ABMS Member Board as an essential tool to assess physician credentials within a given medical specialty.'"  *Id.* ¶ 16 (citing Halpern Decl. Ex. A).

The common feature of all of these allegations is that they are entirely conclusory.  They do not set forth a single fact which, if proven, would make out a conscious agreement to implement an unlawful end.  At the very most, they describe conduct which is as consistent with independent decision-making as with concerted action.  *Cf. Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ("Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.").

By contrast, AAPS's allegations with respect to its negligent misrepresentation count are quite specific.  Thus, AAPS points to various of ABMS's statements which AAPS regards as unlawful.  Essentially, AAPS points to the following:

1.    Participation in the MOC program "enhances [a physician's] medical knowledge, judgment, professionalism, clinical techniques and communication skills." Compl. ¶ 78.

2.    Board certification allows a patient to "count on quality patient care."  *Id.* ¶ 79.

Further, AAPS accuses ABMS of "mislead[ing] the public with its website by inviting patients to search on the names of individual physicians to see if they have complied with Defendant's ABMS MOC® program, thereby falsely implying that physicians who decline to participate or who do not fully complete the program are somehow less competent physicians." *Id.* ¶ 82.

## ARGUMENT

## LEGAL STANDARD APPLICABLE TO THE MOTIONS

Following the Supreme Court's guidance in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Twombly*, 550 U.S. 544, the Third Circuit has devised a two-step framework for adjudicating a motion to dismiss for failure to state a claim.  First, the court must separate "factual and legal elements of a claim," accepting the well-pleaded facts as true and disregarding any legal conclusions.  *Edwards v. A.H. Cornell and Son, Inc.*, 610 F. 3d 217, 219 (3d Cir. 2010).  Second, the court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief."  *Id.* (internal quotes omitted); *see also Santiago v. Warminster Twp.*, 629 F. 3d 121, 129 (3d Cir. 2010).  Here, AAPS has failed to allege facts sufficient to establish that this district is a proper venue, or to show that AAPS has stated a plausible claim on the merits.  Accordingly, the Complaint should be dismissed in its entirety.  Alternatively, the case should be transferred to the United States District Court for the Northern District of Illinois.

## POINT I

## THIS CASE SHOULD BE DISMISSED FOR IMPROPER VENUE OR TRANSFERRED TO THE NORTHERN DISTRICT OF ILLINOIS

ABMS is an Illinois not-for-profit corporation located in Chicago, and AAPS is an Indiana corporation with headquarters in Tucson, Arizona.  Compl. ¶¶ 4-5.  Yet this case was filed in the District of New Jersey.  Because ABMS does transacts no business in New Jersey,

and because AAPS has alleged no facts to suggest that a substantial part of the events giving rise to the claim occurred here, the District of New Jersey is an improper venue under either § 12 of the Clayton Act, 15 U.S.C. § 22, or 28 U.S.C. § 1391(b).  Alternatively, if this Court concludes that venue is authorized by statute, the Court should exercise its discretion under 28 U.S.C. § 1404(a) to transfer the case to the U.S. District Court for the Northern District of Illinois.

### A.   Venue is Not Proper Under § 12 of the Clayton Act Because ABMS Does Not Transact Business in New Jersey

AAPS asserts that venue is proper in this district under § 12 of the Clayton Act, 15 U.S.C. § 22, "because an event giving rise to this litigation occurred here, AAPS has members here, including its immediate Past-President, and Defendant conducts business here."  Compl. ¶ 8.  But the location of a plaintiff or of the events giving rise to the litigation are irrelevant to § 12.  That statute provides (in relevant part): "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business."  15 U.S.C. § 22.  Plaintiff does not allege that ABMS is an "inhabitant" of New Jersey or "may be found" here.  Thus, the only question under § 12 is whether ABMS "transacts business" in this State.

Plaintiff's conclusory assertion that ABMS "conducts business" in New Jersey is insufficient to establish venue.  It is also false.  ABMS is located in Illinois and has "no facilities or employees" in New Jersey; it is not "registered to do business" in New Jersey; and it does not "advertise in publications specifically targeted to residents" of New Jersey.  *Sanderson v. Spectrum Labs, Inc.*, 227 F. Supp. 2d 1001, 1006-07 (N.D. Ind. 2000); *see* Declaration of Laura Skarnulis ("Skarnulis Decl."), ¶¶ 2, 4, 6.  This Court should not accept plaintiff's unsupported allegations to the contrary.  *See Bockman*, 459 F. App'x at 158 n.1 (refusing to rely on venue-related allegations that are "contradicted by the defendant['s] affidavits.").

12

In any event, AAPS does not allege a single fact to suggest that ABMS does business of any substantial character in this state.  *See United States v. Scophony Corp.*, 333 U.S. 795, 807 (1948) (noting that the "test of venue" under the Clayton Act is whether a party is engaged in the "practical, everyday business or commercial concept of doing or carrying on business of any substantial character" (internal quotes removed)).  AAPS's failure to plead such facts renders venue under the Clayton Act improper.  *See Sanderson*, 227 F. Supp. 2d at 1007 ("[A] plaintiff cannot merely plead that a defendant is 'transacting business,' but must plead sufficient facts demonstrating that the defendant transacts business of a substantial nature within the district."); *see also Corr Wireless Commc'ns, L.L.C. v. AT & T, Inc.*, No. 12-cv-36, 2012 WL 5387356, at *6 (N.D. Miss. Nov. 1, 2012) (holding no venue under the Clayton Act where Plaintiffs failed to show, "other than by general unsubstantiated allegations, that AT & T Inc. was or is transacting business or found within this Court's reach").

In a closely analogous case against an ABMS Member Board, the Second Circuit held that the Clayton Act could not support venue in the Western District of New York, notwithstanding the Member Board's certification of physicians there.  *See Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 428-30 (2d Cir. 2005).  The Board in *Daniel* operated out of Michigan.  It had no "office, telephone, bank account, or mailing address," let alone any employees, in New York.  *Id.* at 430.

The impropriety of venue is even clearer in this case: ABMS has no meaningful connection to New Jersey whatsoever.  Unlike the American Board of Emergency Medicine in *Daniel*, ABMS does not certify physicians and thus has never certified any physicians in New Jersey or elsewhere.  Skarnulis Decl., ¶ 5.  Moreover, *none* of the twenty-four Member Boards of ABMS is located in New Jersey.  *Id.*, ¶ 6.  In similar circumstances, a district court in

Washington, D.C., recently dismissed an action under the Clayton Act against ABMS.  *See Jung v. Ass'n of American Medical Colleges*, 300 F. Supp. 2d 119, 140 (D.D.C. 2004) (holding that ABMS has not "transacted 'substantial business'" within the District of Columbia for purposes of the Clayton Act).  This Court should do the same.  *See also Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 437-38 (5th Cir. 1977) (explaining that "a professional association does not 'transact business' in a judicial district merely because some of its members reside in the district and receive the association's publications there"); *Academy of Ambulatory Foot Surgery v. American Podiatry Ass'n*, 516 F. Supp. 378, 381 (S.D.N.Y. 1981) (dismissing complaint against American Podiatry Association for lack of venue in light of the "sporadic nature of its certification and evaluation activities in this District").

### B.    AAPS Cannot Rely on 28 U.S.C. § 1391 to Establish Venue, And Venue Would Not Lie in New Jersey Under That Statute in Any Event

AAPS brought this case under the Clayton Act, relying on § 12's provision for nationwide service of process to serve ABMS in Illinois a summons from this Court.  *See* 15 U.S.C. § 22 (providing that "all process in such cases [*i.e.*, cases under the Clayton Act] may be served in the district of which it is an inhabitant, or wherever it may be found").  But, at least in cases against defendants incorporated in the United States,[4] a plaintiff cannot rely on the Clayton Act's service provision without *also* establishing venue under § 12.[5]  *See Howard Hess Dental Labs., Inc. v. Dentsplay Int'l, Inc.*, 516 F. Supp. 2d 324, 339 (D. Del. 2007) ("[S]ection 12 . . .

---

[4] The Third Circuit has held that a plaintiff may invoke the general venue statute in Clayton Act cases against a *foreign* defendant, *In re Automotive Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 (3d Cir. 2004), but that Court has not addressed the question in the domestic-defendant context.

[5] If AAPS does not intend to rely on the Clayton Act's service provision, then the Complaint should be dismissed for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), for ABMS is not alleged to reside in or have purposefully directed its activities at residents in New Jersey. *See, e.g.*, *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)); *see also Jung*, 300 F. Supp. 2d at 143 (dismissing for lack of personal jurisdiction over ABMS).

may not be supplemented with the general venue provisions of 28 U.S.C. § 1391(b) and/or (c) for purposes of establishing venue for domestic defendants"); *Cumberland Truck Equipment Co. v. Detroit Diesel Corp.*, 401 F. Supp. 2d 415, 423-24 (E.D. Pa. 2005) ("The Court finds that . . . supplementing Section 12 venue *only* for alien corporations, is most consistent with the law in this Circuit.").  Because AAPS relies upon the nationwide service provision, AAPS must show— as it cannot—that ABMS transacts business of a substantial character in New Jersey.

Even if AAPS were entitled to rely on § 1391, the allegations in the Complaint are insufficient to establish venue in this district.  AAPS does not allege that ABMS resides in New Jersey, 28 U.S.C. § 1391(b)(1), or that there is no otherwise-proper venue, *id.* § 1391(b)(3).  Thus, the only question is whether "a substantial part of the events or omissions giving rise to the claim occurred" in this district, § 1391(b)(2).

AAPS does not even assert, much less allege facts sufficient to show, that a *substantial* part of the events giving rise to the claim occurred in New Jersey.  Compl. ¶ 8 (alleging only that "an event giving rise to this litigation occurred here").  This substantiality requirement is not superfluous: it "means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).  Requiring substantiality ensures that the venue statute serves its basic purpose, which is "to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 184 (1979).

The only events that are alleged to have occurred in New Jersey involve J.E., the New Jersey physician who allegedly chose to forgo participating in the MOC program and was then denied staff privileges by a local hospital.  Compl. ¶¶ 28-50.  But J.E.'s decision, and that of the

local hospital, are only tangentially related to the claim against ABMS.  Significantly, AAPS does not and cannot allege that ABMS was directly involved in any way in either decision.

Rather, AAPS's antitrust allegations focus on ABMS's development and promotion of the MOC program.  None of those activities are alleged to have occurred in New Jersey.  Indeed, AAPS has not alleged that ABMS has ever done *anything* in this district that has any bearing on AAPS's claim.  Thus, as in *Daniel*, § 1391(b)(2) provides no basis for venue.  428 F.3d at 434 (holding that an ABMS Member Board's sporadic contacts with the relevant district did not constitute a "substantial part of the events or omissions" giving rise to an antitrust claim).

### C.     Even If Venue Were Proper in This District, This Court Should Transfer the Case to the Northern District of Illinois under 28 U.S.C. § 1404(a)

If the Court concludes that venue is proper in New Jersey, the Court should nonetheless exercise its discretion to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a).  That statute provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

*Id.*  Because ABMS resides in Chicago, venue would be proper in the Northern District of Illinois under either the Clayton Act or the general venue statute.  *See* 15 U.S.C. § 22 (providing for venue "in the judicial district whereof it is an inhabitant"); 28 U.S.C. § 1391(b)(1) (providing for venue in the district the defendant resides).  Illinois is also much more convenient and much closer to both parties' headquarters than New Jersey is.

The Third Circuit has directed district courts that are adjudicating a motion to transfer to consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  Traditionally, a

plaintiff's choice of forum would be among the more powerful considerations in the balance.

However, AAPS's choice of New Jersey is entitled to little weight.  First, as this Court has

repeatedly recognized, "Plaintiff's choice is accorded less weight when the chosen forum is not

the plaintiff's home forum." *LG Electronics, Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d

574, 589 (D.N.J. 2001); *see also NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d

317, 321 (D.N.J. 1998) (same).  AAPS resides in Arizona, not in this district.  Compl. ¶ 4.

Plaintiff's choice enjoys still less deference "when the central facts of a lawsuit occur

outside of the chosen forum."  *NCR Credit*, 17 F. Supp. 2d at 321; *see also One World*

*Botanicals v. Gulf Coast Nutritionals,* 987 F. Supp. 317, 326 (D.N.J. 1997) (same); *S.C. Johnson*

*& Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187-88 (N.D. Ill. 1983) ("As a general rule, the

preferred forum is that which is the center of the accused activity.").  Here, most of ABMS's

activities in developing and promoting the MOC program occurred in Chicago; none is alleged to

have occurred in New Jersey; and none of ABMS's Member Boards is located in New Jersey.

It may be that J.E. and other unspecified AAPS members reside in New Jersey, but the

key events giving rise to the alleged unlawful conduct have no connection to New Jersey at all.

Thus, it would be in the interests of justice to transfer the case to the Northern District of Illinois.

## POINT II

### THE COMPLAINT SHOULD BE DISMISSED FOR
### FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)

**A.**     **Plaintiff Has Failed to Allege Facts That Show a Restraint of Trade**

Section 1 of the Sherman Act forbids any "contract, combination in the form of trust or

otherwise, or conspiracy, in restraint of trade or commerce."  15 U.S.C. § 1.  Significantly, as the

Third Circuit has noted, "without a 'restraint,' there is 'no restraint of trade.'" *Santana Products*

*v. Bobrick Washroom Equipment*, 401 F.3d 123, 132 (3d Cir. 2005) (quoting *Schachar v.*

*American Academy of Ophthalmology*, 870 F.2d 397 (7th Cir. 1989) (Easterbrook, J.)).  Here, no restraint has been alleged.  Although AAPS asserts that ABMS has "imposed" or "required" physicians to participate in the MOC program, Compl. ¶¶ 1, 12, 57, its own allegations confirm that the program is entirely voluntary.  *Id.* ¶ 78; *see also* Halpern Decl. Ex. A ("Board Certification is a voluntary process that goes above and beyond licensing requirements.").  AAPS does not, and cannot, allege that ABMS forced AAPS members to participate in the program, or otherwise "restrained" AAPS members in any way.  *See, e.g.*, *Patel v. American Board of Psychiatry & Neurology, Inc.*, No. 89-cv-1751, 1989 WL 152816, at \*3 (N.D. Ill. Nov. 21, 1989) (dismissing complaint where Plaintiff "failed to allege that defendant has any authority or control over the private hospitals and institutions which allegedly will not hire him to staff positions absent certification").

Controlling Third Circuit law is clear on this point.  In *Santana Products*, 401 F.3d at 132-35, the Court rejected a claim that the defendants had engaged in an unlawful group boycott by working together with a trade organization to criticize the safety of plaintiff's competing product.  *See id.* at 132 ("[T]he conspiracy's emphasis on the failure of HDPE compartments to comply with the NFPA/ASTM standards had a tendency to 'persuade' or 'coerce' specifiers because such private codes are published and are used by various segments of the construction industry.").  The court held that there was no restraint of trade because the plaintiff had not alleged that the defendant "engaged in *coercive* measures that prevented [plaintiff] from selling its products to any willing buyer or prevented others from dealing with [plaintiff]."  *Id.*

Similarly, AAPS does not allege that ABMS has engaged in any coercive measures to force AAPS members to participate in MOC or that ABMS has any control over the staffing decisions of hospitals.  To the contrary, ABMS and its Member Boards simply develop and

implement professional standards for the continuing certification process, and provide information about physicians' compliance with those standards to patients, hospitals, insurance companies, schools, and businesses.  *See, e.g.*, Compl. ¶¶ 15-16, 22, 59, 82.  Informing the public does not constitute a restraint of trade.  As Judge Easterbrook has explained, "when a trade association provides information . . . but does not constrain others to follow its recommendation, it does not violate the antitrust laws."  *Schachar*, 870 F.2d at 399; *see also Poindexter v. American Board of Surgery, Inc.*, 911 F. Supp. 1510, 1520 (N.D. Ga. 1994) ("After the Board expresses its informed opinion regarding the sufficiency of a surgeon's academic training or credentials, users of that information have the sole power to determine whether that surgeon is entitled to patronage, surgical privileges, or preferred insurance rates.").

Applying these principles, this Court rejected an antitrust claim against an ABMS Member Board in *DeGregorio v. American Board of Internal Medicine*, No. 92-cv-4924, 1993 WL 719564 (D.N.J. Oct. 1, 1993) (Report & Recommendation) (Chesler, Mag. J.), *adopted in relevant part*, 844 F. Supp. 186, 187 (D.N.J. 1994) (Barry, J.).  In that case, the plaintiff had long been board certified in cardiovascular disease, enjoying staff privileges at various hospitals, but he challenged the defendant's recertification requirements under § 1 of the Sherman Act.  *See* 1993 WL 719564, at *2.  This Court found it "abundantly clear that plaintiff's Sherman Act claim should be dismissed," for "the Board neither grants licenses to practice medicine, nor does it have any authority to do so."  *Id.* at *10.  Indeed "there [was] no evidence indicating that the Board has any control over how third parties view its certifications."  *Id.*

Because hospitals engaged in staffing decisions were "free to completely ignore the Board's 'stamp of approval,' or lack thereof," this Court concluded that "the Board's recertification requirement is not a restraint of trade at all."  *Id.* at 10-11; *see also Patel*, 1998

19

WL 152816, at *3 (dismissing § 1 claim against ABMS Member Board on the same grounds:

"Plaintiff has failed to allege that defendant has any authority or control over the private

hospitals and institutions which allegedly will not hire him to staff positions absent

certification"). *DeGregorio* applies with equal force here: AAPS's claim fails as a matter of law

because AAPS has not alleged a restraint of trade.

AAPS attempts to suggest that the MOC program is binding rather than voluntary by

alleging that ABMS and its Member Boards acted in concert with The Joint Commission "to

require formal recertification as a condition of having medical staff privileges."  Compl. ¶ 13.  In

fact, however, plaintiff's own allegations confirm that The Joint Commission does *not* require

MOC.  *See* Compl. ¶ 15.  But even if The Joint Commission considers compliance with MOC

when it accredits hospitals,[6] the Complaint does not contain a single factual allegation to support

the conclusion that the decision to do so was the result of a conspiracy with ABMS, rather than

of the independent decision-making of The Joint Commission.  It is more likely, and does not

conflict with any facts alleged, that The Joint Commission was convinced—as Congress is, *see*

Halpern Decl. Ex. C at 53-54—that the MOC program is a valuable signal of quality.

AAPS's failure to plead facts to suggest an agreement, rather than the recognition of the

value of a program, renders the claim insufficient under *Twombly*.  *See* 550 U.S. at 557 (holding

that antitrust allegations "must be placed in a context that raises a suggestion of a preceding

agreement, not merely parallel conduct that could just as well be independent action"); *see also*

*Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 706 (4th Cir. 1991) ("Simply making a peer

---

[6] Plaintiff has not cited a single provision of The Joint Commission's Hospital Accreditation
Standards that requires adherence to the MOC program.  In fact, those publicly available
standards do not have such a requirement.  *See* 2013 Hospital Accreditation Standards (2013),
Ex. E to Halpern Decl., at MS-30 (requiring that hospital consider "all relevant information," and
specifically providing that privileges "are not dependent solely upon certification, fellowship, or
membership in a specialty body or society").

review recommendation does not prove the existence of a conspiracy; there must be something more such as a conscious commitment by the medical staff to coerce the hospital into accepting its recommendation.").

Physicians, including the only physician mentioned in the Complaint (J.E.), can and do practice medicine without certification by an ABMS Member Board.  Compl. ¶ 43 ("J.E. continued to serve his charity patients rather than comply with the foregoing burdens of recertification").  And not all hospitals require participation (or full participation) in the MOC program as a condition of having staff privileges.  *Id.* ¶ 15 (alleging that "*many* hospitals impose *parts* or all of Defendant's ABMS MOC® program against physicians as a condition of having hospital medical staff privileges" (emphasis added)).  That AAPS members can practice medicine and enjoy staff privileges without participating in ABMS's voluntary program further confirms that there is no restraint of trade here.  *See, e.g.*, *Sanjuan v. American Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994) ("plaintiffs already are sellers in the market for psychiatric services; turning down their applications for certification does not remove their output from the market and therefore does not raise prices to consumers"); *Marrese v. American Academy of Orthopaedic Surgeons*, No. 91-1366, 1992 WL 246906, at *6 (7th Cir. Oct. 1, 1992) ("[T]here is no evidence that membership in these societies is necessary to practice sports medicine or hand surgery.  In other words, there is no evidence of any restraint of trade.").

In any event, AAPS is not asking this Court to enjoin ABMS's development and promotion of board certification in general.  (J.E., for example, would presumably like his certification restored.)  Instead, by challenging the MOC program, AAPS seeks to force ABMS's Member Boards to grant certification for life.  In other words, AAPS is demanding for its members the very credential alleged to be anticompetitive.  *Cf. Sanjuan*, 40 F.3d at 252

("Plaintiffs, who want to obtain a credential that will help them charge higher prices, have pleaded themselves out of court on the antitrust claim.").

By establishing the MOC program, ABMS and its Member Boards have sought to create a system that ensures that physicians who initially meet the requirements for board certification continue to develop their skills.  By reporting whether physicians are meeting the requirements of MOC, ABMS helps the public make informed choices concerning the qualifications of physicians and whether these physicians are keeping up-to-date with advancing medical knowledge.  The relief sought by AAPS would interfere with the ability of ABMS and its Member Boards to provide this service.  AAPS should not be permitted to undermine, through litigation, the work of ABMS and its Member Boards in certifying physicians within their specialties.

### B.     Any Harm to AAPS or its Members is the Result of Decisions by Hospitals or Other Bodies—and Does Not Constitute Antitrust Injury

Independent decisions by hospitals and insurers to rely upon board certification as evidence of skill and quality patient care can have negative consequences for a particular physician.  Compl. ¶ 32 (alleging that, "[i]n 2011, [Somerset Medical Center] refused to allow J.E. to remain on its medical staff unless he complied with an extremely burdensome and impractical recertification procedure under the ABMS MOC®.").  However, the consequences of those independent decisions cannot be the predicate for a suit against ABMS: ABMS is not the proximate cause of the harm alleged.  In this case, as in *McDaniel v. Appraisal Institute*, 117 F.3d 421 (9th Cir. 1997), the ABMS MOC program did not exclude AAPS members like J.E. from hospitals; "consumer choice did."  *Id.* at 423; *see also Mass. School of Law*, 107 F.3d at 1036 (holding that ABA could not be held liable for alleged harm arising from independent decisions of state bar authorities to require ABA accreditation).

Moreover, the harm alleged in this case—even if it could be attributed to ABMS—does not constitute *antitrust* injury and therefore cannot sustain a private antitrust suit. *See, e.g.*, 15 U.S.C. § 15(a) (providing for private damages action only where a plaintiff is injured "*by reason of*" an antitrust violation (emphasis added)). As the Supreme Court has explained, a plaintiff seeking to recover under the antitrust laws must prove "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). In other words, an antitrust plaintiff must show "that challenged conduct affected the prices, quantity or quality of goods or services, not just his own welfare." *Mathews v. Lancaster General Hosp.*, 87 F.3d 624, 641 (3d Cir. 1996) (internal quotes omitted).

AAPS has not alleged any facts to suggest that the MOC program has increased the price of hospital care or reduced the amount or quality of care provided. At most, it alleges that patients are denied access to their *preferred* physicians, Compl. ¶ 65, but that is no different from alleging that those particular physicians (such as J.E.) have been denied staff privileges. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 812 (9th Cir. 1988) ("elimination of a single competitor, without more, does not prove anticompetitive effect"). Individual physicians may well be made worse off by certain hospital credentialing decisions, but the antitrust laws "were enacted for 'the protection of *competition* not *competitors*.'" *Brunswick*, 429 U.S. at 488 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)); *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 308 (3d Cir. 2007) ("Conduct that merely harms competitors . . . while not harming the competitive process itself, is not anticompetitive."); *Mass. School of Law v. American Bar Ass'n*, 107 F.3d 1026, 1038 (3d Cir. 1997) ("A loss of prestige resulting from a refusal to approve a product or service does not alone make out an antitrust claim."). AAPS has

failed to allege any harm to competition, and that failure renders the Complaint insufficient as a matter of law.  *See City of Pittsburgh v. West Penn Power Comp.*, 147 F.3d 256, 269 (3d Cir. 1998) (affirming dismissal for failure to plead facts sufficient to show antitrust injury).

To the contrary, the program of continuing certification by an ABMS Member Board in compliance with MOC criteria promotes competition.  When a hospital makes staffing decisions based on physicians' board certification status, it is choosing how to allocate limited resources in light of information it deems useful.  *See Poindexter*, 911 F. Supp. at 1520 ("Hospitals, patients and insurers voluntarily rely on the Board's certification decision, much like an ordinary consumer might rely on a trade group's seal of approval.").  In the absence of a reliable certification from an independent body, hospitals and insurers would likely have to invest more time and money in confirming that each physician they work with is and continues to be qualified.  *See, e.g.*, *McDaniel*, 117 F.3d at 423 ("[A] trusted certification makes it cheaper, in terms of the cost of gathering information, to hire a stranger, so strangers can compete more effectively with those dominating a local market."); *Clamp-All Corp. v. Cast Iron Soil Pipe Institute*, 851 F.2d 478, 487 (1st Cir. 1988) (Breyer, J.) ("[T]he joint development and promulgation of the specification would seem to save money by providing information to makers and to buyers less expensively and more effectively than without the standard."); *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 846 F.2d 284, 296 (5th Cir. 1988) ("Consumers seek [product information] out, for example, by reading *Consumer Reports*, or relying upon the Good Housekeeping and Underwriters Laboratories seals of approval. This information saves buyers the trouble of investigating products themselves and the risk of trying untested products.").

The alternatives to relying on certification are expensive and would increase the cost of credentialing physicians. *See County of Tuolumne v. Sonora Community Hospital*, 236 F.3d 1148, 1159 (9th Cir. 2001) ("It is difficult to see how a hospital, acting independently . . . , can assure itself that a physician has the surgical competence represented by Board certification . . . . Such a substitute . . . can be made effective only by the hospital's incurring substantial costs."). As the Ninth Circuit recognized in *County of Tuolumne*, board certification is thus procompetitive. *Id.* at 1160; *see also Poindexter*, 911 F. Supp. at 1519-20 ("[I]n evaluating the antitrust implications of a profession's self-imposed restrictions, the general presumption is that the public interest is served by the promotion of enhanced education and training requirements." (internal quotes omitted)).

The MOC program reduces the costs of monitoring a physician's skills over time. AAPS alleges the program provides "no benefit to patient care," Compl. ¶ 17, and has "no legitimate purpose," *id.* ¶ 63. But these allegations are belied by the very reliance on the program and on board certification in general that is the alleged cause of the plaintiff's alleged injury. Hospitals and insurers are sophisticated consumers, subject to budget constraints and exposed to significant liability risks. If MOC were an unreliable indicator of quality care, hospitals and insurers would not rely on it. Surely it is not the law that a plaintiff can avoid a motion to dismiss simply by making conclusory allegations that it disagrees with a well-accepted program of providing information. *Cf. Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (affirming dismissal of plaintiff's § 1 claim and "reject[ing] bare statements" that an antitrust violation occurred). If that were the case, no organization could afford to put in place a program such as MOC.

Finally, the allegations of the Complaint that MOC has no value fly in the face of the findings of Congress and CMS.  The Affordable Care Act provides a Medicare incentive payment for physicians who participate in an ABMS MOC program and complete certain additional reporting requirements.  *See* 42 U.S.C. § 1395w-4(m)(7)(B)(ii)(I) (requiring participation in "a Maintenance of Certification Program"); *id.* § 1395w-4(m)(7)(C)(i) (defining "Maintenance of Certification Program" to include a "qualified American Board of Medical Specialties Maintenance of Certification program or an equivalent program").  CMS interprets this provision as "providing an additional incentive for eligible professionals who are actively pursuing activities involved in a continuous assessment program, such as a qualified ABMS Maintenance of Certification Program."  75 Fed. Reg. 73545 (2010), Ex. D to Halpern Decl.; *see also* 42 C.F.R. § 414.90 (2012) (implementing statute).

Congress and CMS have encouraged participation in ABMS MOC programs precisely because those programs promote competition and benefit patients.  This Court reached a similar conclusion in the *DeGregorio* case.  *See* 844 F. Supp. at 190 (finding "ample undisputed evidence" that "the recertification procedure [of an ABMS Member Board] was reasonably designed to further the public good").  As both Congress and CMS have recognized, the MOC program provides useful information to consumers concerning a physician's qualifications, and thereby enhances competition.  The fact that AAPS and its members do not agree with this conclusion should not be sufficient to form the basis for a suit under the Sherman Act.

### C.    AAPS's Negligent Misrepresentation Claim Should be Dismissed

In Count II of its Complaint, AAPS contends that ABMS should be held liable for the tort of negligent misrepresentation.  Compl. ¶¶ 77-93.  The only alleged basis for this Court's jurisdiction over this state-law tort is 28 U.S.C. § 1367.  That statute gives a district court the discretion to decline to exercise supplemental jurisdiction where it "has dismissed all claims over

26

which it has original jurisdiction."  If plaintiff's federal antitrust claim is dismissed for failure to

state a claim, then the Court should dismiss the supplemental state-law claim in Count II.  In fact,

the "Third Circuit has held that, where all federal claims are dismissed before trial, the district

court *must* decline to decide the pendent state claims unless considerations of judicial economy,

convenience, and fairness to the parties provide an affirmative justification" for proceeding.

*Coastal Outdoor Advertising v. Township of Union*, 676 F. Supp. 2d 337, 352 (D.N.J. 2009)

(emphasis added, internal quotes omitted) (citing *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir.

2000)).

 But even if the Court were to consider its merits, Count II should be dismissed for failure

to state a claim.  This is so for two reasons.  First, the statements cited by AAPS are, on their

face, not misrepresentations.  Second, AAPS did not rely on the representations to its detriment.[7]

 The gravamen of plaintiff's negligent misrepresentation claim is that that ABMS

allegedly "makes false and misleading statements in disparagement of physicians who decline to

participate in the ABMS Maintenance of Certification® program."  Compl. ¶ 2.  However, the

specific representations cited in the Complaint are not false or deceptive.  To the contrary, they

are truthful statements or are simply the non-actionable expressions of ABMS's opinion.

 The statements that AAPS contends are false—or, more tenuously, create a "false

impression" or are "falsely implying," Compl. ¶¶ 81-82—are either indisputably true or the

expression of opinion that cannot form the basis for a claim of fraud or misrepresentation.  *See,

e.g.*, *Castrol Inc. v. Pennzoil Co.*, 987 F. 2d 939, 945 (3d Cir. 1993) ("Such sales talk, or puffing,

as it is commonly called, is considered to be offered and understood as an expression of the

---

[7] ABMS assumes, for purposes of this motion, that New Jersey law applies.  But there is no
conflict between New Jersey and Illinois law with respect to the arguments here: both states
require (1) a false statement and (2) detrimental reliance.  *See* cases cited *infra* at 29-30.

seller's opinion only, which is to be discounted as such by the buyer. . . . As such, it is not

actionable.").  AAPS does not and cannot dispute the truthfulness of ABMS's statements that

some physicians do not meet MOC requirements.  *See* Compl. ¶ 80, 82.  Instead, AAPS objects

to the *impression* such statements may create.  *See* Compl. ¶ 81.  But this sort of objection does

not transform a true statement into a false one.

AAPS objects that ABMS "misleads the public . . . by *inviting* patients to search"

ABMS's website to determine whether a physician has complied with MOC requirements.

Compl. ¶ 82 (emphasis added).  But such an invitation cannot be false, and AAPS does not

contend that the results of the suggested internet searches are inaccurate in any respect.  *See id.*

Instead, AAPS takes issue only with what the invitation might be taken to imply.  *See id.*

(alleging that invitation "falsely impl[ies] that physicians who decline to participate or who do

not fully complete the program are somehow less competent physicians").  Once again,

implications and impressions are not statements or representations, and AAPS nowhere suggests

or alleges that ABMS has ever *said* that physicians who decline to participate in MOC are

incompetent.

AAPS also cites statements concerning the quality of the MOC program, such as that the

MOC program "enhances [physicians'] medical knowledge, judgment, professionalism, clinical

techniques and communications skills," *id.* ¶ 78, and that, with a board certified doctor, "you can

count on quality patient care," *id.* ¶ 79.  These are nothing more than the expression of ABMS's

opinion that participation in MOC is a signal of quality care.  *Cf. Syncsort Inc. v. Sequential*

*Software, Inc.*, 50 F. Supp. 2d 318, 341 (D.N.J. 1999) ("General claims of product superiority are

often deemed an innocuous kind of puffery."); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399

(E.D. Cal. 1994) (explaining that "vague, highly subjective claims as opposed to specific,

detailed factual assertions" cannot constitute misrepresentation).  AAPS and its members may

disagree with that opinion.  But that disagreement does not make the statements in question

actionable negligent misrepresentations.  In any event, Congress and numerous credentialing

authorities have recognized the value of the MOC program.  *See, e.g.*, Halpern Decl. Ex. C at 53-

54.

      Finally, the negligent misrepresentation claim fails as a matter of law because the

Complaint does not allege that AAPS or its members reasonably and detrimentally relied on

ABMS's statements.  *See Karu v. Feldman*, 574 A.2d 420, 425 (N.J. 1990) ("The aggrieved

party must be a reasonably foreseeable recipient of the company's statements for its proper

business purpose, who relies on the statements"); *First Midwest Bank, N.A. v. Stewart Title

Guar. Co.*, 843 N.E.2d 327, 334-35 (Ill. 2006) (noting that tort requires "action by the other party

in reliance on the truth of the statement"); *see also Wyndham Hotels & Resorts, LLC v. Northstar

Mt. Olive, LLC*, No. 10-cv-2583, 2013 WL 1314747, at *11 (D.N.J. Mar. 28, 2013)

("Establishing a claim for negligent misrepresentation requires showing that a defendant

negligently made an incorrect statement, and that the plaintiff justifiably relied on that

statement.").

      This reliance requirement is central to the tort of negligent misrepresentation, which (as

this Court has recently noted) is "quite similar to common-law fraud."  *TekDoc Servs., LLC v. 3i-

Infotech Inc.*, No. 09-cv-6573, 2013 WL 2182565 (D.N.J. May 20, 2013).  In particular, the

"element of reliance is the same for fraud and negligent misrepresentation." *Kaufman v. i-Stat

Corp.*, 754 A.2d 1188, 1195 (N.J. 2000).  And because the plaintiff's reliance is central, AAPS's

claim would fail even if ABMS's statements to the public caused AAPS substantial harm, for, as

this Court has explained, "if one brings a claim for misrepresentation then whatever statement is

made has to be directed *at the plaintiff* claiming harm." *Gibbs v. Massey*, No. 07-cv-3604, 2009 WL 838138 (D.N.J. Mar. 26, 2009) (emphasis added); *see also Great Cent. Ins. Co. v. Ins. Servs. Office, Inc.*, 74 F.3d 778, 785 (7th Cir. 1996) (Posner, J.) ("There is no authority for maintaining a suit for negligent misrepresentation on the ground that other people . . . were deceived by the misrepresentation and as a consequence injured the plaintiff.").

## CONCLUSION

For the reasons set forth above, ABMS respectfully requests that the Complaint of AAPS be dismissed in its entirety for improper venue or, alternatively, for failure to state a claim. If the Court concludes that venue is proper in this district and that the Complaint states a cause of action, ABMS respectfully submits that the Court should nonetheless exercise its discretion under 28 U.S.C. § 1404(a) to transfer this action to the Northern District of Illinois.

Respectfully submitted,

/s/ Arnold B. Calmann

| | |
|---|---|
| Jack R. Bierig | Arnold B. Calmann |
| Michael P. Doss | Jeffrey S. Soos |
| Steven J. Horowitz | Jakob B. Halpern |
| **SIDLEY AUSTIN LLP** | **SAIBER LLC** |
| One South Dearborn Street | One Gateway Center |
| Chicago, Illinois 60603 | Newark, NJ 07102-5311 |
| (312) 853-7000 | (973) 622-3333 |
| (312) 853-7036 (Fax) | (973) 622-3349 (Fax) |
| jbierig@sidley.com | abc@saiber.com |
| mdoss@sidley.com | js@saiber.com |
| shorowitz@sidley.com | jbh@saiber.com |

Dated: June 17, 2013

*Attorneys for Defendant American Board of Medical Specialties*