IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., | ) ) | |
| | ) | Civil Action |
| Plaintiff, | ) ) | |
| vs. | ) ) | No. 3:13-cv-2609-PGS-LHG |
| AMERICAN BOARD OF MEDICAL SPECIALTIES, | ) ) ) | Return Date: Aug. 5, 2013 |
| Defendant. | ) ) ) | |

BRIEF OF PLAINTIFF ASSOCIATION OF AMERICAN
PHYSICIANS & SURGEONS, INC.,
IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER

Andrew L. Schlafly (AS4533)
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
(908) 719-8608
*Attorney for Plaintiff Association of
American Physicians & Surgeons, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................. iv

INTRODUCTION ............................................................................................ 1

STATEMENT OF FACTS ............................................................................... 4

ARGUMENT .................................................................................................. 10

    Legal Standard ........................................................................................ 10

    POINT I: The Burden of Proof to Avoid Venue Is on Defendant ABMS, Which Has Not Met its Burden ......................................................................................... 11

        A. As an Organization that Sets Standards for Application in this District, Defendant ABMS Is Subject to Venue Here ..................................... 12

        B. Defendant ABMS Has Contracted for Sufficient Work in this District to Support Venue Here ............................................................... 13

        C. Venue Likewise Exists in this Judicial District under 28 U.S.C. § 1391 .......... 15

        D. Plaintiff AAPS Should Be Allowed to Conduct Discovery on the Venue Issue, If this Court Finds Any Merit to It ............................... 16

        E. Key Witnesses Are in This District, and a Transfer in Venue Would Be Inappropriate ................................................................................ 17

    POINT II: The Complaint Properly Alleges a Claim Under Fed. R. Civ. P. 12(b)(6) ........ 19

        A. Plaintiff Has Alleged Facts That Show a Restraint of Trade ............... 20

        B. Defendant ABMS Admits It Has Agreed with Other Entities to Implement its MOC, But Errs in Denying the Harm and Denying Antitrust Injury ................ 28

            1. Defendant's Factual Assertions Are Misplaced on Its Motion to Dismiss .... 30

            2. Plaintiff AAPS Has Properly Alleged Antitrust Injury Here ........................ 31

            3. Defendant ABMS's Factual Speculation about Benefits from its MOC Program Are Misplaced on its Motion to Dismiss Here ............... 35

        C. Plaintiff AAPS States a Valid Cause of Action for Negligent Misrepresentation ............................................................... 38

CONCLUSION ........................................................................................................43

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page(s)**

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
   486 U.S. 492 (1988) .......................................................................................*passim*

*Am. Needle, Inc. v. NFL*,
   130 S. Ct. 2201 (2010) ................................................................................ 19, 29

*American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*,
   456 U.S. 556 (1982) ............................................................................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 19

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................19, 25

*Brader v. Allegheny Gen. Hosp.*,
   64 F.3d 869 (3d Cir. 1995) .............................................................................31, 33

*Broadcom Corp. v. Qualcomm Inc.*,
   501 F.3d 297 (3d Cir. 2007) ............................................................................... 35

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*,
   429 U.S. 477 (1977) ............................................................................................ 34

*Castrol, Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ............................................................................... 41

*City of Pittsburgh v. West Penn Power Co.*,
   147 F.3d 256 (3d Cir. 1998) ............................................................................... 35

*Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*,
   851 F.2d 478 (1st Cir. 1988) .............................................................................. 34

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*,
   723 F.2d 357 (3d Cir. 1983) ............................................................................... 17

*Consolidated Metal Products, Inc. v. American Petroleum Institute*,
   846 F.2d 284 (5th Cir. 1988) .............................................................................. 34

*Continental Grain Co. v. Barge FBL*,
   *585*, 364 U.S. 19 (1960) .................................................................................... 18

*Cost Mgmt. Servs. v. Washington Natural Gas Co.*,
    99 F.3d 937 (9th Cir. 1996) ................................................................. 33

*DeGregorio v. American Board of Internal Medicine*,
    844 F. Supp. 186 (D.N.J. 1994) ....................................................... 15, 33

*DeGregorio v. American Board of Internal Medicine*,
    No. 92-cv-4924 (cited by Def. Mem. 6, 19, 20, 26) (D.N.J. Oct. 1, 1993) ...................... 2, 23, 33

*Erickson v. Pardus*,
    551 U.S. 89 (2007) ....................................................................... 19, 26

*Fashion Originators' Guild of America, Inc. v. FTC*,
    312 U.S. 457 (1941) .......................................................................... 21

*FTC v. Indiana Federation of Dentists*,
    476 U.S. 447 (1986) .......................................................................... 20

*Fuentes v. South Hills Cardiology*,
    946 F.2d 196 (3d Cir. 1991) ................................................................. 33

*Great Cent. Ins. Co. v. Ins. Servs. Office*,
    74 F.3d 778 (7th Cir. 1996) ................................................................. 42

*H. Rosenblum, Inc. v. Adler*,
    93 N.J. 324, 461 A.2d 138 (1983) ........................................................... 39

*Haskell v. Time, Inc.*,
    857 F. Supp. 1392 (E.D. Cal. 1994) ......................................................... 43

*Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*,
    617 F.3d 207 (3d Cir. 2010) ................................................................. 41

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997) ............................................................. 40

*Judson v. Peoples Bank & Trust Co.*,
    25 N.J. 17, 134 A.2d 761 (1957) ............................................................ 41

*Jumara v. State Farm Ins. Co.*,
    55 F.3d 873 (3d Cir. 1995) ................................................................. 18

*Kaufman v. I-Stat Corp.*,
    165 N.J. 94, 754 A.2d 1188 (2000) .......................................................... 41

*Limestone Dev. Corp. v. Vill. of Lemont*, 33333
    520 F.3d 797 (7th Cir. 2008) ............................................................... 25

*Marrese v. American Academy of Orthopaedic Surgeons*,
   No. 91-1366, 1992 U.S. App. LEXIS 25530 (7th Cir. Oct. 1, 1992) ......................................... 27

*Massachusetts Sch. of Law at Andover v. ABA*,
   107 F.3d 1026 (3d Cir. 1997)............................................................................................... 31

*Mathews v. Lancaster Gen. Hosp.*,
   87 F.3d 624 (3d Cir. 1996).................................................................................................. 34

*McCall v. Metropolitan Life Ins.*,
   956 F. Supp. 1172 (D.N.J. 1996). ....................................................................................... 39

*McDaniel v. Appraisal Inst.*,
   117 F.3d 421 (9th Cir. 1997), *cert. denied*, 523 U.S. 1022 (1998)................................31, 34

*McGlinchy v. Shell Chemical Co.*,
   845 F.2d 802 (9th Cir. 1988)............................................................................................... 35

*Medstar Health, Inc. v. Becton Dickinson & Co. (In re Hypodermic Prods. Antitrust Litig.)*,
   2007 U.S. Dist. LEXIS 47439 (D.N.J. June 29, 2007) ...................................................... 33

*Metcalfe v. Renaissance Marine, Inc.*,
   566 F.3d 324 (3d Cir. 2009) ............................................................................................... 16

*Myers v. American Dental Ass'n*,
   695 F.2d 716 (3d Cir. 1982), *cert. denied*, 462 U.S. 1106 (1983)............................2, 11, 12, 19

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)............................................................................................................ 16

*Patel v. American Bd. of Psychiatry & Neurology, Inc.*,
   1989 U.S. Dist. LEXIS 14011 (N.D. Ill. Nov. 20, 1989)................................................... 22

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008)................................................................................................ 20

*Poindexter v. American Bd. of Surgery*,
   911 F. Supp. 1510 (N.D. Ga. 1994) ................................................................................... 34

*Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*,
   364 U.S. 656 (1961) ......................................................................................................20, 21

*Santana Prods. v. Bobrick Washroom Equip. Inc.*,
   401 F.3d 123 (3d Cir.), *cert. denied*, 546 U.S. 1031 (2005)............................................... 21

*Schachar v. American Academy of Ophthalmology, Inc.*,
  870 F.2d 397 (7th Cir. 1989)..................................................................... 27

*Surpitski v. Hughes-Keenan Corp.*,
  362 F.2d 254 (1st Cir. 1966) ..................................................................... 17

*Syncsort Inc. v. Sequential Software, Inc.*,
  50 F. Supp. 2d 318 (D.N.J. 1999) .............................................................. 42

*United States v. Scophony Corp. of Am.*,
  333 U.S. 795 (1948)..................................................................................... 13

*White v. ABCO Eng'g Corp.*,
  199 F.3d 140 (3d Cir. 1999) ....................................................................... 17

**Statutes**

12 U.S.C. § 3352(d)........................................................................................ 31

15 U.S.C. § 22 .......................................................................................... 11, 13

28 U.S.C. § 1391 ...................................................................................... 15, 16

28 U.S.C. § 1391(b)(2) ................................................................................... 15

28 U.S.C. § 1404(a) ........................................................................................ 17

N.J. Stat. § 45:9-8 ............................................................................................. 3

**Rules and Regulations**

Fed. R. Civ. P. 12(b)(6) ............................................................................ 10, 20

N.J.A.C. 13:35-4A.12(b)(2)(ii) ........................................................................ 3

**TO THE HONORABLE PETER G. SHERIDAN:**

Plaintiff Association of American Physicians & Surgeons ("AAPS" or "Plaintiff"), by and through its counsel, hereby opposes the motion to dismiss [Doc. 11] filed by Defendant American Board of Medical Specialties ("ABMS" or "Defendant"):

## INTRODUCTION

Defendant ABMS has agreed with numerous other entities to impose what ABMS calls "MOC Requirements," in reference to its ABMS Maintenance of Certification® (also known as "ABMS MOC®") program. Physicians who do not satisfy these "requirements" are branded as inferior and, through ABMS's concerted actions in restraint of trade, are excluded from hospitals and insurance plans. ABMS even hopes to link state licensure to its proprietary product, so that physicians who do not purchase its MOC program will be prevented from renewing their medical licenses.

This is a lucrative money-making scheme for ABMS and its co-conspirators, but it also restrains trade by reducing access by patients to physicians in violation of the antitrust laws. Plaintiff AAPS, which has physician members in this judicial district who have been harmed by ABMS's conduct, brought this action to end the antitrust law violations and the misrepresentations by ABMS.

Defendant ABMS already admits a basic allegation in this lawsuit: that it has entered into a series of agreements to cause physicians, including those in New Jersey, to purchase its MOC program. This has caused a physician in this judicial district, J.E., to be excluded from the medical staff of a hospital here. Defendant's own website describes its program as "MOC Requirements," and invites New Jersey patients and physicians to look up which New Jersey physicians are "Not Meeting MOC Requirements," thereby

injuring the reputation of those physicians.  The numerous other allegations in the Complaint, taken as true at this stage of the litigation, establish additional restraints of trade and misrepresentation by Defendant.

Defendant ABMS does not want to answer for its conduct in this court, and has moved to dismiss or transfer this case based on venue.  But controlling Third Circuit precedent is clear: Defendant ABMS bears the burden of proof to avoid venue here, and it has not met its burden in order to deny judicial scrutiny here of its violation of antitrust laws.  In its moving papers, Defendant instead resorts in large part to decisions that are taken from jurisdictions outside of the Third Circuit or are unreported, such as an unpublished recommendation by a Magistrate in 1993 upon which Defendant repeatedly relies.[1]

Defendant ABMS fails to mention, let alone distinguish, the controlling Third Circuit precedent ensuring the existence of venue here.  *See Myers v. American Dental Ass'n*, 695 F.2d 716 (3d Cir. 1982), *cert. denied*, 462 U.S. 1106 (1983).  There the American Dental Association ("ADA") was sued in the Virgin Islands for its alleged violation of antitrust law.  The ADA insisted there, just as ABMS insists here, that venue was lacking.  The Third Circuit thoroughly rejected that attempt to avoid venue, just as the ABMS's motion here should be denied.

*Myers v. American Dental Ass'n* places the burden of proof on a defendant who seeks to avoid venue, and ABMS falls far short of meeting its burden.  Its only evidence

---

[1] Fully half – 28 out of 56 – of the decisions in Defendant's moving papers are either unpublished or from other jurisdictions.  The Magistrate's recommendation upon which Defendant repeatedly relies is so obscure that it is not even available in the massive LEXIS legal database, and Defendant did not provide a copy with its submission. *DeGregorio v. American Board of Internal Medicine*, No. 92-cv-4924 (D.N.J. Oct. 1, 1993) (cited by Def. Mem. 6, 19, 20, 26).

is a cursory, 7-paragraph declaration by its chief operating officer, which is most notable for what it fails to address. This declaration omits any mention of ABMS's substantial attempt to influence patients and physicians in New Jersey, ABMS's expenditure of more than $600,000 in New Jersey as recently as 2011, and ABMS's express inclusion in New Jersey statutory law. (Compl. ¶ 8, citing N.J. Stat. § 45:9-8 and N.J.A.C. 13:35-4A.12(b)(2)(ii)). At a minimum, it would be premature to dismiss or transfer this case based on venue without first allowing Plaintiff AAPS to obtain discovery concerning the omissions in this declaration by ABMS.

Defendant ABMS has acted in concert with more than two dozen other entities to perpetrate a money-making scheme that restrains trade in violation of Section One of the Sherman Act. Defendant ABMS's conduct causes a reduction in consumer choice and in the output of medical services. Its antitrust violations caused AAPS member J.E. to lose his medical staff privileges at a hospital located in this judicial district, thereby depriving his hospitalized patients of access to their own physician. Defendant ABMS targets patients and physicians in this judicial district for its misrepresentations about the meaning of its MOC program. Simply put, Plaintiff AAPS has adequately alleged an antitrust violation and misrepresentations by ABMS, with venue in this judicial district, and ABMS has not met its burden of proof to move this case elsewhere. This Court should allow this lawsuit to proceed on AAPS's claims for equitable relief to enjoin Defendant's continuing violations of antitrust law and misrepresentations, and on AAPS's request for a refund of fees paid by its members for the ABMS MOC® program.

3

## STATEMENT OF FACTS

Founded in 1943, Plaintiff AAPS is a membership organization of thousands of physicians, including physicians practicing in this judicial district. (Compl. ¶ 4) Members of AAPS, including those located here, have been harmed by ABMS's web of agreements that exclude and marginalize physicians who decline to purchase and participate in programs imposed as a result of ABMS's agreements. (*Id.*)

Defendant ABMS, a nonprofit entity incorporated in Illinois, transacts business in New Jersey and throughout the United States. (*Id.* ¶ 5) Defendant ABMS has agreed with at least two dozen separate corporations to impose on physicians a recertification program known as "ABMS MOC®," which these organizations have implemented against physicians. (*Id.* ¶¶ 10, 12)

Defendant ABMS has acted in concert with The Joint Commission, a private company that accredits more than 20,000 health care organizations and hospitals, including the Somerset Medical Center (SMC) in this judicial district, to require formal recertification as a condition of having medical staff privileges. (*Id.* ¶ 13) In November 2009 and afterward, Defendant ABMS and several of its co-conspirators obtained agreement by The Joint Commission that hospitals must enforce requirements against physicians for renewal of their medical staff privileges, and that these requirements should include some or all of Defendant's ABMS MOC® program, and many hospitals comply by excluding good physicians from their medical staffs. (*Id.* ¶¶ 14-15) In addition, Defendant ABMS has acted in concert with other groups to induce health insurers to "use Board Certification by an ABMS Member Board as an essential tool to assess physician credentials within a given medical specialty." (*Id.* ¶ 16, quoting

4

ABMS's own website[2])

There is, in fact, no benefit to patient care from Defendant's ABMS MOC® recertification program.  (*Id.* ¶ 17)  Indeed, a co-conspirator of Defendant ABMS even offers ten years of recertification for a substantial cash payment in lieu of an examination. (*Id.* ¶ 18)

Defendant ABMS has conspired to exclude physicians from medical staffs if they do not purchase ABMS's product, and this exclusion is detrimental to hospitalized patients who wish to be seen by their own physicians.  (*Id.* ¶ 21-22)  It is contrary to public policy for ABMS, as a private entity lacking in public accountability and transparency, to restrain trade by imposing its own proprietary product as a condition for patients to have access to their own physicians at hospitals.  (*Id.* ¶ 23)

Indeed, Defendant's ABMS MOC® program imposes far greater burdens than any analogous program in any other profession, and surveys demonstrate that an overwhelming majority of physicians – perhaps more than 90% – think that ABMS's program is unjustified.  (*Id.* ¶ 24)  There is no evidence that Defendant's program advances any legitimate goal for patient care, and the primary purpose of the implementation of Defendant's MOC program is to enrich executives at ABMS and at the corporations with which ABMS has conspired.  (*Id.* ¶¶ 25-26)

Defendant ABMS's agreements and actions resulted in the unjustified exclusion of a physician member of Plaintiff AAPS ("J.E.") from the medical staff at SMC, a hospital located in Somerville, New Jersey.  (*Id.* ¶ 29)  Physician J.E. had been on the SMC medical staff to treat patients there for twenty-nine (29) years.  (*Id.* ¶ 30)

---

[2] http://certificationmatters.org/faqs.aspx (viewed July 20, 2013).

J.E. had been board certified by the predecessor to The American Board of Family Medicine ("ABFM"), but SMC refused to allow J.E. to remain on its medical staff unless he complied with the burdensome, impractical requirements of Defendant's ABMS MOC®.  (*Id.* ¶¶ 31-32, 34)  ABFM is one of the two-dozen entities that agreed with Defendant ABMS to require ABMS MOC®.  (*Id.* ¶ 33)  These burdensome requirements imposed by Defendant ABMS and its co-conspirator ABFM demand far in excess of 100 hours for a typical physician, with the possibility of an unjustified rejection of recertification for reasons having no proven connection with patient care.  (*Id.* ¶ 35)  These requirements also impose many thousands of dollars in fees and travel expenses, and take physicians away from providing care for patients.  (*Id.* ¶¶ 36-37)  Similar burdens are imposed by additional co-conspirators, such as the American Board of Internal Medicine (ABIM), which admitted on or about April 6, 2013, that Defendant "ABMS is requiring more frequent participation in MOC of all board certified physicians."  (*Id.* ¶ 38)  But there is no value to patients in the completion of Defendant's increasingly onerous recertification requirements, as illustrated by how ABMS itself appointed as its new President/CEO in 2012 someone who was "Not Meeting MOC Requirements," but received an exemption not available to younger physicians.  (*Id.* ¶¶ 46-47)

Like many other physicians who are members of AAPS, J.E. spends a substantial percentage of his time providing charity care to patients who would not otherwise have access to medical care.  (*Id.* ¶ 39)  For example, J.E. manages and works in a stand-alone medical charity clinic for a substantial part of each week.  (*Id.* ¶ 40)  Requiring J.E. to spend hundreds of hours on requirements for recertification under ABMS MOC® would

result in an hour-for-hour reduction in his availability to provide medical care to his many charity patients, who have surpassed 30,000 patient visits in total number.  (*Id.* ¶ 41)

These patients of J.E. typically lack any alternate means of obtaining comparable medical care, so if J.E. does not see them, then they go untreated.  (*Id.* ¶ 42)  J.E. continued to serve his charity patients rather than comply with the enormous burdens of recertification demanded by Defendant's agreement with ABFM to implement ABMS MOC®.  (*Id.* ¶ 43)

Effective June 24, 2011, SMC excluded J.E. from its medical staff, as a result of Defendant ABMS's restraint of trade, and patients are now denied the benefit of being evaluated and treated by J.E. when taken by emergency to SMC.  (*Id.* ¶ 44-45)

J.E. is unquestionably a first-rate physician who continues to practice in good standing in New Jersey, and whether J.E. purchases and complies with ABMS MOC®, as implemented by the ABFM, has no bearing on his medical skills as a physician.  (*Id.* ¶¶ 48-49)  Like J.E., other members of AAPS face imminent injury from Defendant's agreements and concerted action to impose its MOC program.  (*Id.* ¶ 50)  Defendant's conduct limits the supply of physicians available to hospitalized patients, thereby denying patients medical care by their choice of physicians.  (*Id.* ¶ 51)

The publicly available IRS Form 990 sets forth the immense self-enrichment by executives at Defendant ABMS and its co-conspirators – often exceeding $700,000 annually – which results in large part from imposition of their MOC requirements.  (*Id.* ¶ 53, citing publicly available IRS Form 990 documents).  It is this financial incentive that drives Defendant ABMS to engage in its restraint of trade.  (*Id.* ¶ 54)  There is no legitimate purpose to Defendant's actions, which reduce the supply of physicians

7

available to treat patients in various settings.  (*Id.* ¶ 63)

With a common design among Defendant and other organizations, Defendant's agreements and actions injured and continue to injure competition by causing anticompetitive effects on medical services provided by physicians, thereby limiting patients' access to their own physicians at hospitals.  (*Id.* ¶¶ 64-65)  Defendant's actions have reduced the availability of physicians to patients, and unreasonably restrained trade by restricting competition and decreasing output with respect to medical services in the relevant market of hospital-based services.  (*Id.* ¶¶ 27-28, 66-67, 69)

In addition, Defendant ABMS has impugned the reputations of physicians who decline to purchase and spend many hours on the ABMS MOC program, by making false and misleading statements on its website about the value of its "MOC Requirements." (*Id.* ¶¶ 78-80)  Defendant ABMS creates the false impression that ABMS MOC® is indicative of the medical skills of physicians, and that as a result physicians who decline to purchase Defendant's product are somehow likely to be less competent.  (*Id.* ¶ 81) Defendant ABMS misleads the public with its website by inviting patients to search on the names of individual physicians to see if they have complied with the "MOC Requirements," thereby falsely implying that physicians who decline to participate in this proprietary program are somehow less capable physicians.  (*Id.* ¶ 82)

The ABMS MOC® program, in fact, has no significant correlation with the medical skills of physicians, being designed primarily to enrich Defendant and its own executives, rather than improving quality of care for patients.  (*Id.* ¶¶ 83-84)  Many of the questions asked of physicians as part of Defendant's MOC program, for which physicians must provide the preferred answers in order to be recertified, have no relevance to the

quality of care that the physician provides, and there is no meaningful public accountability or transparency as to whether the answers preferred by Defendant are really the best answers.  (*Id.* ¶ 85)

Defendant has deceived physicians (including members of Plaintiff AAPS) and the public by pretending that Defendant's ABMS MOC® measures the medical skills and competence of a physician, and Defendant has been negligent in making its false and misleading statements.  (*Id.* ¶¶ 86-87)  Physicians, including members of Plaintiff AAPS, have been compelled by Defendant's conduct to rely on its misrepresentations in order to remain on hospital medical staffs, and have been injured as a result.  (*Id.* ¶¶ 88-90)

On April 23, 2013, Plaintiff AAPS filed this lawsuit for a declaratory judgment that Defendant has violated Section One of the Sherman Act, an injunction against Defendant to prevent recurrence of its restraint of trade, a refund of fees paid by its members in connection with Defendant's ABMS MOC® program, and statutory attorneys' fees.  (*Id.* ¶¶ 73-76, 93)  Plaintiff AAPS also seeks an injunction ordering Defendant to cease and desist making false statements about its program.  (*Id.* ¶ 92)

On June 17, 2013, Defendant moved for dismissal or transfer based on venue, and for dismissal based on FED. R. CIV. P. 12(b)(6).  [Doc. 11]

## ARGUMENT

### Legal Standard

This Court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to" plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "Moreover, in the event a complaint fails to state a claim, unless amendment would be futile, the District Court must give a plaintiff the opportunity to amend her complaint." *Id.*

Under this legal standard, Defendant's motion to dismiss based on venue and FED. R. CIV. P. 12(b)(6) should be denied in its entirety. Defendant ABMS has not satisfied its burden of proof to avoid venue here or justify its Rule 12(b)(6) motion to dismiss the Complaint.

Specifically, as to the venue issue, Defendant ABMS is akin to a standard-setting organization that is subject to venue wherever its standards are being enforced. Third Circuit precedent is clear, and other jurisdictions are in accord, that venue exists in judicial districts where there is foreseeable implementation of standard-setting by an organization such as ABMS, such as in this judicial district. Defendant has not demonstrated otherwise.

Defendant ABMS's motion to dismiss is likewise without merit. Defendant has already admitted to having numerous agreements with other entities in furtherance of Defendant's attempt to impose what it describes as "MOC Requirements." These agreements constitute a restraint of trade which reduces access by patients to physicians and resulted in the exclusion of AAPS member J.E. from a hospital in this judicial district. Accordingly, discovery should proceed on the restraint of trade issue. As to

10

Plaintiff AAPS's claim for negligent misrepresentation, it has also been pled sufficiently to survive Defendant's motion to dismiss.

## POINT I

### The Burden of Proof to Avoid Venue Is on Defendant ABMS, Which Has Not Met its Burden

Defendant ABMS fails to satisfy its burden of proof against venue in this district, under controlling Third Circuit precedent. *Myers v. American Dental Association*, 695 F.2d 716 (3d Cir. 1982). The *American Dental Ass'n* decision clearly established that the burden is on defendant, not plaintiff, to prove that venue is improper:

> "[I]t is not necessary [as contrasted with jurisdiction] for the plaintiff to include allegations showing the venue to be proper." Fed. R. Civ. P. Form 2, Advisory Committee note 3. ***It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it.***

*Id.* at 724 (emphasis added). *See also Great Western Mining & Mineral Co. v. ADR Options, Inc.*, 434 Fed. Appx. 83, 87 (3d Cir. 2011) ("[T]he firm failed to satisfy its burden of showing that venue was improper in the District of New Jersey, and the District Court erred in dismissing Great Western's amended complaint on that basis.").

Defendant's only evidence on its motion against venue is its boilerplate declaration, totaling less than three pages, which addresses none of the New Jersey-based allegations in the Complaint, and which omits basic facts that support venue here. Defendant's scant declaration falls far short of what is needed to defeat the broad antitrust venue provision, 15 U.S.C. § 22. Defendant's declaration consists mostly of statements irrelevant to expansive antitrust venue, and falls far short of the evidence that would be necessary to avoid venue by an organization that imposes standards in this district.

**A. As an Organization that Sets Standards for Application in this District, Defendant ABMS Is Subject to Venue Here.**

The Third Circuit, in finding venue in the Virgin Islands against the American Dental Association, emphasized that venue exists for a non-profit professional membership organization that sets standards applicable in the district, even though venue may not likewise exist for "ongoing businesses organized for profit." *American Dental Ass'n*, 695 F.2d at 726**.** The Court held:

> Professional associations are commonly devoted to the advancement and enforcement of standards of conduct and competence for their members. Common sense suggests that such an organization is transacting business when it engages in activities on a significant scale which further the association's purposes and objectives. In particular, when a national professional organization, such as the American Dental Association, polices the qualifications of members residing in a judicial district, or ***sets standards which it attempts to enforce that directly pertain to the dental practice of its members and the treatment of their patients, the organization's activities should provide a basis for venue in the district in which they occur***.

*Id.* (emphasis added).

Defendant ABMS expressly "policies the qualifications" of physicians residing in this judicial district, with its much-promoted "Certification Matters" website quoted in the Complaint with the internet links.  (Compl. ¶¶ 16, 78, 79, 82)  ABMS's website asks patients who reside in this judicial district to determine whether their physician has complied with ABMS's MOC program, in order to decide whether to use that physician.  (*Id.* ¶ 82)  ABMS thereby directly seeks to influence patients in this judicial district to dissuade them from seeing physicians who have not complied with the "MOC Requirements," and puts pressure on those non-complying physicians to participate in the ABMS MOC program.  (*Id.* ¶ 80)  This easily satisfies the *American Dental Ass'n* test to establish antitrust venue over a standard-setting organization.

12

In its cursory declaration, Defendant ABMS swears that it does not engage in any "public relations" or "publicity" in New Jersey.  Declaration of Laura Skarnulis ¶ 4 (June 17, 2013) [hereinafter, "Skarnulis Decl."].  But that is misleading, because its much-promoted "Certification Matters" campaign specifically targets physicians and patients in New Jersey (and elsewhere), inviting them to look up whether New Jersey physicians have complied with "MOC Requirements."  That is "public relations" and "publicity" directed intentionally by Defendant ABMS at New Jersey residents, in order to punish New Jersey physicians who decline to participate in the ABMS program to put pressure on them to pay into the ABMS MOC program.  There is no other way to describe that ABMS campaign than as "public relations" and "publicity" directed at New Jersey.

## B.  Defendant ABMS Has Contracted for Sufficient Work in this District to Support Venue Here.

Defendant ABMS has contracted for substantial work to be performed in New Jersey, which provides an additional basis to bring ABMS within the expansive antitrust venue provision of 15 U.S.C. § 22.  As the U.S. Supreme Court made clear more than a half-century ago, the antitrust venue phrase "transacts business" has "a much broader meaning for establishing venue than the concept of 'carrying on business' denoted by 'found' under the preexisting statute and decisions."  *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948).   In *Scophony*, the U.S. Supreme Court found venue for antitrust purposes over a British corporation that had its principal place of business and offices in London.  The corporation had negotiated legal agreements in New York, and antitrust venue was found on that basis by the U.S. Supreme Court.  Narrower interpretations of the terms "transacts business" were rejected, as the Court announced

13

that Section 12 of the Clayton Act (including the venue provision) ended the ability of companies to violate antitrust law "without thereby also creating venue to enforce it." 333 U.S. at 808 n.19.  Yet Defendant ABMS implicitly argues for a return to the era prior to Clayton Act Section 12 and *Scophony*, by trying to evade venue here.

In 2011 – the most recent year for which this information is publicly available – the single greatest amount of contract work performed by defendant ABMS was here in New Jersey.  Yet Defendant ABMS's cursory declaration avoids any mention of this.  As disclosed on Defendant ABMS's IRS Form 990, its highest paid contractor in 2011 was the Newark-based Sills, Cummis & Gross, to which ABMS paid $648,006.  Declaration of Andrew L. Schlafly, ¶ 2 & Exh. A thereto (July 22, 2013).  The actual work done is not disclosed on that form, but Sills, Cummis & Gross specializes in writing medical staff bylaws and ensuring compliance "with updated Joint Commission standards."  (*Id.* ¶ 3 & Exh. B thereto)  Mostly likely, that firm advised ABMS on its business activities in New Jersey, or was retained to push ABMS's program in hospitals.  Either way, this strongly suggests that ABMS did "transact business" in New Jersey in 2011, one of the years at issue in this lawsuit.

If, as ABMS claims on its motion to dismiss (without any cross-examination or even discovery), it has no business activities in New Jersey, then why did it pay more than $600,000 to a Newark firm?  The obvious inference is that this Newark firm was hired by ABMS to advance its standard-setting requirements, such as including MOC in medical staff bylaws.  At this early stage of the litigation, such reasonable inferences must be drawn in favor of Plaintiff AAPS.  The fact that some of the standard-setting

work at issue in this case was developed in New Jersey under contract by Defendant ABMS would be sufficient to constitute "transacting business" here for venue purposes.

It is noteworthy that the authority on which Defendant ABMS relies elsewhere in its memorandum, *DeGregorio v. American Board of Internal Medicine*, 844 F. Supp. 186, 187 (D.N.J. 1994) (cited by Def. Mem. 19, 26), was not dismissed for lack of venue despite having a procedural posture similar to here.  The American Board of Internal Medicine is not based in New Jersey just as Defendant ABMS is not, but venue existed to litigate a claim in antitrust against the out-of-state standard-setting organization. Likewise, venue exists here in this procedurally analogous case.

### C.  Venue Likewise Exists in this Judicial District under 28 U.S.C. § 1391.

The Complaint also correctly alleges venue based on 28 U.S.C. § 1391, which is independent from the broad venue provision of the Clayton Act.  (Compl. ¶ 8)  Much of the Complaint focuses on the exclusion of J.E. from the medical staff of a hospital (SMC) located in this judicial district, in Somerville, New Jersey.  (*Id.* ¶¶ 29-50)  This easily establishes venue, because "a substantial part of the events or omissions giving rise to the claim occurred" here.  28 U.S.C. § 1391(b)(2).  Defendant ABMS tries to downplay the significance of the exclusion of J.E. from the hospital in this judicial district, but Defendant's argument goes to the merit of the case, not to venue.  (Def. Mem. 15-16) The burden of proof is on Defendant to avoid venue here, and it offers nothing factual to diminish the significance of what happened to J.E. here, as extensively alleged in the Complaint.  Thus Defendant fails to satisfy its burden in objecting to venue.

Deficient in its objection, Defendant ABMS resorts to a strained argument that personal jurisdiction would somehow be lacking over it if venue were based here on 28 U.S.C. § 1391 rather than on the Clayton Act.  (Def. Mem. 14 n.5)  But ABMS's argument fails by its own admission that this is not an issue if defendant "purposefully directed its activities at residents in New Jersey." (*Id.*)  Defendant ABMS does precisely that with its promotional campaign that asks New Jerseyans to find out, though ABMS's own website, whether New Jersey physicians have satisfied "MOC Requirements." (Compl. ¶ 80)  Moreover, Defendant ABMS's expenditure of more than $600,000 in New Jersey as discussed in Point I.B above easily satisfies the undemanding test for personal jurisdiction.

### D.  Plaintiff AAPS Should Be Allowed to Conduct Discovery on the Venue Issue, If this Court Finds Any Merit to It.

Third Circuit precedent requires, at a minimum, that Plaintiff AAPS be allowed to conduct discovery on the venue issue before it may be decided against it.  "The Supreme Court instructs that 'where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.'"  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978)).  The Third Circuit adopted the reasoning of the First Circuit when it held:

> "A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of full discovery. If the court did not choose to hear witnesses, this may well have been within its province, but in such event plaintiff was certainly entitled to file such further interrogatories as were reasonably necessary and, if he wished, to take depositions."

*Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983) (quoting *Surpitski v. Hughes-Keenan Corp.*, 362 F.2d 254, 255 (1st Cir. 1966)).

These precedents are controlling here, in order to allow discovery by Plaintiff AAPS on issue of venue.  Discovery is essential here for Plaintiff AAPS to ascertain the full extent of Defendant ABMS's transaction of business in this district.  As the Third Circuit held in *Compagnie*, Plaintiff AAPS should not be limited to trying this issue "on affidavits without the benefit of full discovery."  723 F.2d at 362 (quotations and citation omitted).  Rather, discovery should proceed on the venue issue if this court finds any merit in Defendant's motion.

### E. Key Witnesses Are in This District, and a Transfer in Venue Would Be Inappropriate.

Defendant ABMS argues that, assuming venue is proper here, that this Court should nevertheless transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a).  But Defendant's argument overlooks that the key witnesses concerning the exclusion of J.E. from the SMC facility are located here.  Convenience, as well as deference to plaintiff's choice of venue, supports keeping the case in this district.

Findings are required by a district court before transferring a case to another district, and Defendant ABMS provides too little in the way of evidence to support a transfer in venue.  "'The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong--however brought in a court--presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, *after findings*, transfer the whole action to the more convenient court.'"  *White v. ABCO Eng'g Corp.*, 199 F.3d

140, 143 (3d Cir. 1999) (quoting *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19 (1960) (emphasis added by the Third Circuit as it reversed a transfer in venue)).

Both private and public interests militate in favor of retaining venue here.  The leading private interest is "plaintiff's forum preference as manifested in the original choice," as well as "the convenience of the parties as indicated by their relative physical and financial condition."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  Both of these key factors weigh heavily in favor of keeping venue here.  Plaintiff AAPS chose this venue, and the witnesses associated with the exclusion of J.E. from the hospital here in Somerville are located in this venue.  Those witnesses would have great difficulty traveling to Chicago to attend a trial, while the wealthy Defendant ABMS executives would have no comparable difficulty to appear here.  As to the public interest, there is a "local interest in deciding local controversies at home," which further tips the balance in favor of staying here to decide the issues relating to the exclusion of J.E. from the medical staff at a hospital here.  *Id.*  Defendant offers no evidence about the relative congestion of this court compared with the proposed transferee court, and without such evidence its motion must also fail.  *See id.* (one public interest factor is "the relative administrative difficulty in the two fora resulting from court congestion").

Defendant ABMS is simply incorrect when it argues that that "the key events giving rise to the alleged unlawful conduct have no connection to New Jersey at all." (Def. Mem. at 17)  The facts relating to the specific instance of J.E.'s exclusion from the medical staff of a hospital arose in this judicial district.  J.E. is in this district, as is the hospital (SMC).  Witnesses are here.  The interest of the public, with many physicians and hospitals affected by Defendant ABMS's agreements, is located here also.

Defendant ABMS fails to identify any specific witnesses who would be inconvenienced by litigation here.  *American Dental Ass'n*, 695 F.2d at 724 (burden of proof is on the movant who objects to venue).  Defendant does not justify its attempt to override plaintiff's choice of venue here, and the inconvenience a transfer in venue would have on the witnesses located here.  Defendant's motion to transfer must be denied

## POINT II

### THE COMPLAINT PROPERLY ALLEGES A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

The standard in reviewing Defendant ABMS's motion to dismiss is that all the allegations in the Complaint are taken to be true, and all permissible inferences are drawn in favor of Plaintiff AAPS.  Dismissal is improper if the allegations in the Complaint "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  All that the Federal Rules of Civil Procedure require at this early stage is that the Complaint provide Defendant with "fair notice of what the ... claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

Plaintiff AAPS provided Defendant ABMS with more than the requisite "fair notice."  In addition to alleging sufficient facts to plead a Sherman Act Section One violation, Plaintiff AAPS's Complaint even includes two Supreme Court precedents that directly support the cause of action.  *See* Compl. ¶ 54 (citing *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988); *id.* ¶ 68 (citing *Am. Needle, Inc. v. NFL*, 130 S. Ct. 2201 (2010)).

But Defendant ABMS does not even mention these controlling Supreme Court precedents, let alone distinguish them, in its FED. R. CIV. P. 12(b)(6) arguments for dismissal.  (Def. Mem. at 17-26)  Instead, Defendant ABMS relies on decisions that have no applicability here.

### A.  Plaintiff Has Alleged Facts That Show a Restraint of Trade

As explained by the controlling U.S. Supreme Court holding in *Allied Tube*:

> Typically, private standard-setting associations, like the Association in this case, include members having horizontal and vertical business relations. See generally 7 P. Areeda, Antitrust Law P1477, p. 343 (1986) (trade and standard-setting associations routinely treated as continuing conspiracies of their members). ***There is no doubt that the members of such associations often have economic incentives to restrain competition and that the product standards set by such associations have a serious potential for anticompetitive harm.*** *See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 571, 72 L. Ed. 2d 330, 102 S. Ct. 1935 (1982). ***Agreement on a product standard is, after all, implicitly an agreement not to manufacture, distribute, or purchase certain types of products. Accordingly, private standard-setting associations have traditionally been objects of antitrust scrutiny. See, e. g., ibid.; Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.***, 364 U.S. 656, 5 L. Ed. 2d 358, 81 S. Ct. 365 (1961) (per curiam). *See also  FTC v. Indiana Federation of Dentists*, 476 U.S. 447 (1986).

486 U.S. a 500-01 (emphasis added, footnote deleted).  The Supreme Court quoted approvingly Professor Areeda's observation, "'Product standardization might impair competition in several ways. ... [It] might deprive some consumers of a desired product, eliminate quality competition, exclude rival producers, or facilitate oligopolistic pricing by easing rivals' ability to monitor each other's prices.'" *Id.* at 500 n.5 (quoting 7 P. Areeda, Antitrust Law P1503, p. 373 (1986)).

Contrary to Defendant ABMS's argument – which does not even mention the controlling *Allied Tube* holding – the Supreme Court has established that mere agreements about standard-setting should face antitrust scrutiny, and concerted efforts to

enforce those agreements warrant even "more rigorous antitrust scrutiny."  *Id.* at 501 n.6 (citing *Radiant Burners, Inc. v. Peoples Gas Light & Coke Co.*, 364 U.S. 656, 659-660 (1961) (per curiam); *Fashion Originators' Guild of America, Inc. v. FTC*, 312 U.S. 457 (1941)).

The Complaint explains how Defendant ABMS has agreed with other entities to set a standard for recertification known as the ABMS MOC, and impose that standard on hospitals and insurance plans.  (Compl. ¶¶ 10-15, 57-59)  This does "deprive consumers of a desired product" as forbidden by *Allied Tube*: the services of their own physician at a local hospital, because their own physician is excluded from the hospital staff for not having recertified pursuant to the ABMS MOC.  486 U.S. at 500 n.5 (quoting 7 P. Areeda, Antitrust Law P1503, p. 373 (1986)).  A specific example of this, concerning the physician "J.E.", was alleged in detail in the Complaint.  (Compl. ¶¶ 29-50)  This adequately alleges a restraint of trade that violates Section One of the Sherman Act.

In its argument, Defendant ABMS relies heavily on a case that is irrelevant here, because it did not concern any standard-setting: *Santana Prods. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123 (3d Cir. 2005), *cert. denied*, 546 U.S. 1031 (2005) (cited by Def. Mem. at 17, 18).  The decision in *Santana Prods.* expressly relied on how the allegations did ***not*** involve a standard-setting body.  "Contrary to Santana's assertions, however, the TPMC is not a standard-setting body. It does not set, adopt, or enforce any industry standards for safety or other product characteristics."  401 F.3d at 134.  In the absence of any standard-setting, the *Santana* case boiled down to a complaint about a rival firm's freedom of speech, which the Third Circuit found was not an antitrust issue. *Id.* at 132.

Defendant ABMS is a standard-setting body, and has conspired with another standard-setting body, The Joint Commission.  (Compl. ¶¶ 1, 54, 79)  As a result, this lawsuit fits squarely within *Allied Tube*, which found that a restraint of trade had been properly alleged, in contrast with *Santana*.  AAPS ***does*** allege that ABMS's standard-setting work has restrained access to the medical services of AAPS member J.E., by causing his exclusion from the medical staff of Somerset Medical Center (SMC), contrary to Defendant's argument that its program is merely "voluntary".  (Def. Mem. 18, which oddly relies on a mere attorney declaration for a factual assertion about ABMS).  Most illegal restraints of trade consist of voluntary agreements and exclusions, but their voluntary nature does not make them legal.  Because of Defendant ABMS's restraint of trade, physician J.E. and many others are excluded from offering services at hospitals and through insurance plans, which reduces consumer choice and the output for medical services and deprives many patients of the services they seek.  (Compl. ¶¶ 63, 65-70)

Defendant ABMS found an inadequately pled antitrust lawsuit from more than two decades ago in district court in Illinois, and misplaces reliance on it for its motion here. *Patel v. American Bd. of Psychiatry & Neurology, Inc.*, 1989 U.S. Dist. LEXIS 14011 (N.D. Ill. Nov. 20, 1989) (cited by Def. Mem. 18).  But there the plaintiff's complaint was dismissed because "[t]he complaint lacks any allegation that defendant acted in concert with anyone." *Id.* at *7-8.  That is not the case here, where the Complaint alleges in detail (and Defendant even admits in its own Declaration) that it has entered into agreements with 24 other corporations for implementing its ABMS MOC recertification program.  (Skarnulis Decl. at ¶ 3)

The reliance by Defendant ABMS on a dismissal of an antitrust claim against the American Board of Internal Medicine is likewise misplaced. *DeGregorio v. American Board of Internal* Medicine, No. 92-cv-4924 (D.N.J. Oct. 1, 1993) (unpublished, but cited at Def. Mem. 6, 19, 20, 26) (Report & Recommendation), *rev'd in part*, 844 F. Supp. 186, 187 (D.N.J. 1994). That decision, which predates the onerous ABMS MOC at issue here, lacked the essential allegation that exists here: physicians being excluded from hospital medical staffs and insurance plans due to lack of recertification pursuant to the ABMS MOC program. (Compl. ¶¶ 1, 9, 13-15, 22, 29, 32, 44, 59, 88) Moreover, that decision was on summary judgment, not on the pleadings. 844 F. Supp. at 187. After discovery the plaintiff in *DeGregorio* lacked any evidence that third parties were using recertification to exclude him, in sharp contrast with the facts here. *Id.* at 188. Plaintiff's case in *DeGregorio* amounted to nothing more than speculation ***even after discovery***. *Id.* That is not the case here, where the allegations are very specific about the reduction in output for medical services by J.E. due to Defendant ABMS's antitrust violations, and where discovery will likely provide abundant additional evidence of antitrust violations by Defendant. (Compl. ¶¶ 64-70)

By virtue of Defendant ABMS's agreements with two-dozen organizations and its concerted action with The Joint Commission, hospitals are no longer "free to completely ignore the Board's stamp of approval, or lack thereof," as Defendant asserts. (Def. Mem. 19, quoting *DeGregorio*) Defendant has conspired with entities to cause hospitals and insurance plans to improperly exclude physicians who do not comply with ABMS MOC. That is an antitrust violation, and Defendant ABMS offers no evidence contrary to the allegations in the Complaint that establish this violation.

The Complaint expressly states that:

> To comply with The Joint Commission's requirements, many hospitals impose parts or all of Defendant's ABMS MOC® program against physicians as a condition of having hospital medical staff privileges, and exclude qualified physicians simply because they do not participate in the ABMS MOC® program.

Compl. ¶ 15.  Inexplicably, Defendant cites the foregoing allegation to argue that The Joint Commission somehow does not require MOC.  (Def. Mem. 20)  But the foregoing allegation is clear:  many hospitals do require MOC in order to "comply with The Joint Commission's requirements."  Nothing more is required under the Federal Rules of Civil Procedure for notice pleading.

Defendant ABMS submits a subset of The Joint Commission standards along with its motion to dismiss, and on its page 12 is the express requirement that all department chairs be board certified or otherwise complete the equivalence of the board certification. (Def. Exh. E to Halpern Decl., p. MS-12, MS.01.01.01 - A36)  That means, as a practical matter, that all department chairs must satisfy the burdensome ABMS MOC as required by Defendant ABMS and its two-dozen agreements with specialty boards, except for those older physicians who enjoy the ABMS-conferred "grandfather" exception.  This board-certification and recertification requirement could only have come at the insistence of Defendant ABMS, as alleged in the Complaint.  Since the department chair position is largely administrative, requiring ABMS MOC for it is particularly unjustified; more senior administrators at hospitals are not even required to be licensed physicians.

Defendant ABMS's own exhibit further demonstrates how The Joint Commission requires that hospitals include "appropriate" certification in their evaluation of every medical practitioner at the hospital, in order to "determine a practitioner's ability to provide patient care."   (Def. Exh. E to Halpern Decl., p. MS-28, Elements of

Performance for MS.06.01.05  - 2)  Again, the requirement by The Joint Commission that certification status be part of the evaluation could only have come from the Defendant ABMS and its web of agreements, as alleged in the Complaint.  Defendant ABMS quotes another section of the Hospital Accreditation Standards stating that medical staff membership cannot be granted based "solely" on certification, but that caveat merely means that certification alone cannot automatically qualify a physician for a medical staff because there must also be additional requirements for medical staff membership.  Participation in ABMS MOC can – and is – used to exclude physicians from medical staffs at hospitals, as the example of physician J.E. in the Complaint fully demonstrates.  (Compl. ¶¶ 29-50)

Defendant then insists that The Joint Commission acts independently of the agreements forged by Defendant ABMS, but the Complaint explains that Defendant ABMS has sought and obtained agreement by The Joint Commission to "enforce requirements against physicians for renewal of their medical staff privileges, and that these requirements should include some or all of Defendant's ABMS MOC® program."  Compl. ¶ 14.  This easily suffices to plead an antitrust violation.

Defendant insists that *Bell Atlantic v. Twombly* somehow requires more, but Defendant's own quotation belies its argument.  Not only has Plaintiff AAPS alleged "a suggestion of a preceding agreement," but Defendant ABMS even admits in its motion papers that it has entered into preceding agreements – 24 of them.  (Skarnulis Decl. ¶ 3)  And as Judge Posner has made clear, *Twombly* "must not be overread."  *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).  Judge Posner explained:

> The Court denied "requir[ing] heightened fact pleading of specifics," 127 S. Ct. at 1974; "a complaint ... does not need detailed factual allegations."  *Id.* at 1964.

> Within weeks after deciding *Bell Atlantic*, the Court reversed a Tenth Circuit decision for requiring fact pleading. *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam).

*Limestone Dev. Corp.*, 520 F.3d at 803.

Ultimately, Defendant ABMS resorts to a fallacious argument that because physicians can still practice medicine without purchasing the ABMS MOC program, that somehow requires dismissal of this lawsuit.  (Def. Mem. 21)  If such an argument were valid, then almost every Sherman Act Section One lawsuit would be dismissed at the starting gate, because virtually no restraint of trade completely prevents a firm from selling its product.  What matters, of course, is not whether physicians may still practice medicine, but whether Defendant ABMS has impeded their ability to practice in a particular market.  (Compl. ¶¶ 27-28)  The answer to that is "yes", as Defendant ABMS's restraint of trade impedes the ability of good physicians to provide services to hospitalized patients.  The fact that these same physicians may practice elsewhere, as in J.E.'s charity clinic, reinforces how this restraint of trade with respect to the relevant market is an antitrust violation.  The fact that Defendant ABMS has not yet been entirely successful in stopping physicians from practicing anywhere is hardly a reason to deny judicial review of its partially successful restraint of trade.

Despite how we are within the Third Circuit for this lawsuit, Defendant ABMS relies heavily on several Seventh Circuit decisions – except for the above-quoted passage by Judge Posner emphasizing the importance of not dismissing cases prematurely.  A closer look at Defendant's Seventh Circuit authorities reveals how they do not support his motion to dismiss.  Judge Easterbrook, for example, emphasized that "enforcement mechanisms" which implement standards set by private groups, such as ABMS, are

indeed "restraints of trade" in violation of antitrust laws. *Schachar v. American Academy of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989) (citing *Allied Tube*). Such "enforcement mechanisms" by Defendant ABMS, acting in concert with The Joint Commission, fall well within Judge Easterbrook's category of antitrust violations. Similarly, the unpublished Seventh Circuit decision of *Marrese v. American Academy of Orthopaedic Surgeons*, No. 91-1366, 1992 U.S. App. LEXIS 25530 (7th Cir. Oct. 1, 1992), does not support Defendant's motion. (Def. Mem. 21)[3] Plaintiff Marrese was given full discovery to prove his alleged restraint by defendant, but "[a]fter twelve years, Marrese has not been able to show any such restraint. It is time finally to put this case, with its attendant drain on the Academy's and the courts' resources, to rest." *Id.* at *20. That decision does not support dismissal of this action at this preliminary stage.

Defendant ABMS misunderstands the essence of the restraint of trade alleged in Complaint. (Def. Mem. 21) The exclusion of physicians, including J.E., from hospital medical staffs for lack of recertification is a restraint of trade. It does not matter that J.E. may still practice outside of hospitals. The point is that J.E.'s patients who are taken to the hospital (SMC), often involuntarily due to an emergency, are prevented by Defendant ABMS's scheme from being seen there by the physician of their choice, J.E. This is a reduction in the output of services, and thus governed by application of the antitrust laws.

Physician J.E., and others like him, do not seek lifetime certification from Defendant ABMS, as Defendant arrogantly argues. Contrary to Defendant's assertion, J.E. (who spends much of his time providing charity care) does ***not*** "want to obtain a

---

[3] It is curious that Defendant would cite an unpublished opinion from the Seventh Circuit, which expressly forbids its use as precedent there, in order to try to use it as precedent here in New Jersey. It is difficult to see why Defendant would think that a non-precedential decision from another Circuit, which cannot even be cited there, would have any precedential value here.

credential that will help [him] charge higher prices."  (Def. Mem. at 21-22, quoting *Sanjuan*, 40 F.3d at 252)  Rather, J.E. seeks a lifting of the restraint of trade by Defendant, whereby it obtains agreements from other entities to exclude physicians who have not purchased Defendant's costly ABMS MOC program, and thereby prevents J.E.'s patients from being seen by J.E. when they are taken to the local hospital in an emergency.  (Compl. ¶ 45)  Antitrust law prohibits Defendant ABMS from obtaining agreement by other entities to enforce the program in a manner that restrains trade.  Yet that is what Defendant is doing, and that is why its motion to dismiss must be denied.

Defendant concludes its argument about restraint of trade by pretending that it is merely providing a public service, and that "[t]he relief sought by AAPS would interfere with the ability of ABMS and its Member Boards to provide this service."  (Def. Mem. at 22)  But the enormous salaries publicly disclosed in the IRS Form 990s illustrate that Defendant ABMS's scheme has become something very different from a public service. (Compl. ¶ 53)  Regardless of whether Defendant's activities constituted a public service two decades ago when its cited precedents were decided, Defendant is engaging in a money-making venture now that is driven by massive financial reward.  None of the relief sought in this lawsuit would prevent Defendant ABMS from genuinely acting to benefit the public.   Rather, this lawsuit seeks an end to the agreements between Defendant ABMS and other entities that are maximizing Defendant's monetary gain by causing the denial of services to the public by physicians who decline to purchase Defendant's product.  This lawsuit seeks to stop what the antitrust laws prohibit.

### B.  Defendant ABMS Admits It Has Agreed with Other Entities to Implement its MOC, But Errs in Denying the Harm and Denying Antitrust Injury.

In its moving papers, Defendant ABMS admits and confirms sufficient facts to

require denial of its motion to dismiss: Defendant has "agreed" with 24 other entities "to evolve their certification programs to one of continuous professional development called ABMS Maintenance of Certification® (ABMS MOC®)."  (Skarnulis Decl. ¶ 3)  Under the unanimous Supreme Court decision in *Am. Needle v. NFL*, those agreements alone are sufficient to trigger antitrust scrutiny, justify the need for discovery, and require denial of Defendant's motion to dismiss.  *Am. Needle*, 130 S. Ct. 2201 (2010).  Defendant ABMS failed to distinguish or even mention the *Am. Needle* precedent, even though it was prominently included in the Complaint and is directly controlling here.  (Compl. ¶ 68)

In *Am. Needle*, the Seventh Circuit had granted summary judgment against an antitrust complaint alleging restraint of trade from agreements among the NFL teams to license their intellectual property collectively, but the Supreme Court unanimously reversed and reinstated the case.  130 S. Ct. at 2206-07.  The Supreme Court held that agreements among teams in the NFL are fully subject to antitrust scrutiny, despite how the teams are all members of one league with the same objective of providing entertainment.  *Id.* at 2213-14.  Simply put, agreements among different entities to act in a collective manner are subject to scrutiny under the antitrust laws to the extent they reduce output or otherwise cause a restraint in trade.

The case at bar is closely analogous, as the 24 specialty boards are conceptually similar to the teams in the NFL for the purposes of this analysis.  Agreements among Defendant ABMS and the 24 specialty boards – which Defendant has now admitted exist – are just as subject to antitrust scrutiny as agreements among NFL teams.  The clear motivation in both cases is to increase prices by reducing output, which is prohibited by the Sherman Act.

**1.  Defendant's Factual Assertions Are Misplaced on Its Motion to Dismiss.**

Much of Defendant ABMS's argument is based in factual assertions which have no evidentiary basis, and which are wholly inappropriate on a motion to dismiss.  For example, Defendant ABMS alleges that decisions to exclude physicians from hospitals for lack of participation in ABMS MOC were "independent decisions" beyond the scope of the antitrust laws.  (Def. Mem. 22)  But whether these decisions were "independent" or not is a question of fact that can only be resolved after there is discovery in this action. The allegations in the Complaint, taken to be true at this stage, are that the hospital decisions were ***not*** independent, but were based on restraint of trade by Defendant ABMS and The Joint Commission (which dictates standards for hospitals), including ABMS's now-admitted agreements with two-dozen other entities "to require the ABMS MOC® program."  Compl. ¶ 44.  These agreements in restraint of trade by Defendant ABMS, along with its concerted action with The Joint Commission, are fully subject to review here under Section One of the Sherman Act.  Defendant ABMS cannot avoid judicial review by simply asserting, without any factual basis, that it must have been independent decision-making rather than its web of agreements that caused (and continues to cause) the reduction in output of medical services.

Moreover, Defendant ABMS cites no factual basis for its factual assertions.  Def. Mem. 22 – numerous factual assertions without any citations to evidence to support them).  Instead, Defendant relies on legal decisions that predate its ABMS MOC program, as its only support for its factual assertions.  For example, Defendant ABMS relies on a Ninth Circuit decision that was on summary judgment after plaintiff had an opportunity for discovery, which found that plaintiff's "freedom to compete in the

appraisal market was protected by federal law, which requires various federal agencies not to exclude a certified or licensed appraiser 'solely by virtue of … lack of membership in any particular appraisal organization.'"   *McDaniel v. Appraisal Inst.*, 117 F.3d 421, 423 (9th Cir. 1997), *cert. denied*, 523 U.S. 1022 (1998) (quoting 12 U.S.C. § 3352(d)). The case at bar concerns that sort of exclusion which expressly did not exist in the *McDaniel* case, and which is ***not*** protected by any law other than antitrust.  It is not "consumer choice" that excluded physician J.E. from SMC, but rather a web of agreements by Defendant ABMS in unlawful restraint of trade.

Defendant ABMS also misplaces reliance on *Massachusetts Sch. of Law at Andover v. ABA*, 107 F.3d 1026 (3d Cir. 1997), which affirmed a grant of summary judgment against a non-accredited law school that had sued accrediting organizations under antitrust laws.  There discovery did proceed so that the plaintiff could marshal evidence to prove its claim.  The obstacle plaintiff could not ultimately overcome was the fact that states, not private entities, determine who may sit for the bar exam, and this intervening cause could not be subject to antitrust claims.  States enjoy some immunity from antitrust laws, as does petitioning of states by private entities, and the *Mass. School of Law* decision relied heavily on those doctrines.  *Id*. at 1036.  That is not the case here on Defendant's motion to dismiss.  Defendant's agreements are with other purely private entities, and the hospital that excluded J.E. is private also.  None of the doctrines that resulted in the grant of summary judgment in *Mass. School of Law* applies here.

### 2.  Plaintiff AAPS Has Properly Alleged Antitrust Injury Here.

"The existence of an 'antitrust injury' is not typically resolved through motions to dismiss."  *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995).  Defendant

ABMS's argument for dismissal here based on "antitrust injury" amounts to its request that this court overrule the Third Circuit's precedent in *Brader*, which found antitrust injury in the denial of medical staff privileges by a hospital at the pleading stage, as Plaintiff has alleged here.  Yet Defendant ABMS did not even cite, let alone distinguish, the controlling precedent in *Brader* that antitrust claims should not be dismissed at the pleading stage based on lack of proof of an antitrust injury.  The Third Circuit in *Brader* reversed a district court's grant of a motion to dismiss an antitrust claim, because antitrust injury need not be proven at the pleading stage.

"We are not in a position to predict whether Brader will ultimately be able to sustain his burden of proof on this issue since Brader has not yet had an opportunity to obtain evidence," held the Third Circuit in *Brader*.  64 F.3d at 876.  The same is true here.  Plaintiff AAPS has adequately alleged that Defendant ABMS's agreements have reduced the availability of physicians for patients.  The ABMS MOC would require physician "J.E. to spend hundreds of hours on requirements for recertification" which "would result in an hour-for-hour reduction in his availability to provide medical care to his many charity patients."  (Compl. ¶ 41)  As is the case for many patients, the "[p]atients of J.E. typically lack any alternate means of obtaining comparable medical care."  (*Id.* ¶ 42)  Patients see a reduction in choice of physicians at hospitals that have been coerced into requiring ABMS MOC as a condition of being on their medical staffs. (*Id.* ¶ 51)

In the case of J.E., his patients who are taken to SMC in emergencies cannot be seen by their own physician, due to Defendant's actions.  (*Id.* ¶ 45)  Defendant does not, and cannot, deny that this is a reduction in output of medical services that results from its

ABMS MOC.   A reduction in output, including a reduction in consumer choice, obviously does constitute antitrust injury.  The Third Circuit held that plaintiff:

> Brader's pleading requirement on this issue is satisfied by his allegation that the defendants unreasonably restricted his ability to practice in the Pittsburgh area and thereby "successfully reduced competition" for the defendants' services. We therefore reject defendants' argument regarding the adequacy of Brader's pleading of an 'antitrust injury' and decline to affirm the dismissal of his claim on this ground at this stage of the litigation.

*Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d Cir. 1995) (citing *Fuentes v. South Hills Cardiology*, 946 F.2d 196, 202 (3d Cir. 1991), which likewise reversed a district court's grant of dismissal of an antitrust action in the context of medical staff privileges)).

Defendant ABMS fails to provide any basis for dismissing Plaintiff's allegations of antitrust injury.  In denying a motion to dismiss antitrust claims, a federal court in New Jersey held that "Defendant cites to no legal authority indicating that such allegations have been insufficiently plead."  *Medstar Health, Inc. v. Becton Dickinson & Co. (In re Hypodermic Prods. Antitrust Litig.)*, 2007 U.S. Dist. LEXIS 47439, *52 n.27 (D.N.J. June 29, 2007).  Defendant's cited authorities for its antitrust injury argument are mostly on summary judgment, not on a motion to dismiss.  (Def. Mem. 23-24)  Plaintiff AAPS need not prove anticompetitive effects on the market at the pleading stage.  As one appellate court explained:

> In order to survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), an antitrust complaint need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws. CMS's complaint should not be dismissed unless it appears beyond doubt that CMS can prove no set of facts in support of its claim which would entitle it to relief.

*Cost Mgmt. Servs. v. Washington Natural Gas Co.*, 99 F.3d 937 (9th Cir. 1996) (quotations and citations omitted).  *See also Bell Atlantic*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the

pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.").

Ignoring the controlling Third Circuit precedents of *Brader* and *Fuentes*, Defendant ABMS instead relies for its antitrust injury argument on ten decisions which were mostly at the post-discovery or even post-trial stage, rather than at the pleading stage as here. (Def. Mem. 24-25). For example, *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*, 429 U.S. 477 (1977), was decided after ***two*** trials, such that plaintiff had every possible opportunity to prove antitrust injury. *Id.* at 481. In another case relied upon by Defendant, the Third Circuit affirmed a grant of ***summary judgment***, not dismissal, because the physician "failed to produce ***evidence*** of concerted action and antitrust injury." *Mathews v. Lancaster Gen. Hosp.*, 87 F.3d 624, 628 (3d Cir. 1996) (emphasis added). These precedents are unhelpful to Defendant's motion to dismiss here. *See also Mass. School of Law*, 107 F.3d at 1032 (disposition was on summary judgment) (cited by Def. Mem. 23); *Poindexter v. American Bd. of Surgery*, 911 F. Supp. 1510, 1514 (N.D. Ga. 1994) (summary judgment) (cited by Def. Mem. 24); *McDaniel v. Appraisal Inst.*, 117 F.3d 421, 423 (9th Cir. 1997) (summary judgment) (cited by Def. Mem. 24); *Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 481 (1st Cir. 1988) (summary judgment) (cited by Def. Mem. 24); *Consolidated Metal Products, Inc. v. American Petroleum Institute*, 846 F.2d 284, 286 (5th Cir. 1988) (summary judgment) (cited by Def. Mem. 24).

Defendant ABMS reaches to the Ninth Circuit for a rare instance when an antitrust complaint was dismissed at the pleading stage, but that was because the case concerned the elimination of merely "a single competitor" from a market. *McGlinchy v.*

*Shell Chemical Co.*, 845 F.2d 802, 812 (9th Cir. 1988) (quoted by Def. Mem. 23).  Such is not the case here, where the Complaint describes how Defendant ABMS's actions result in the exclusion of many competitors from the market, and a reduction in the output of medical services.  (Compl. ¶¶ 13-15, 69, 91)  Similarly, where there is no competition at all, then a city lacks antitrust standing to block a merger between two companies that were not competing against each other in the first place.  *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 267 (3d Cir. 1998) ("without competition, there can be no injury to competition") (cited by Def. Mem. 24).  Such ruling has no application here, where the injury to competition is clearly pled and can hardly be denied.  (Compl. ¶¶ 60, 65, 69)  Defendant also misplaces reliance on another antitrust challenge to a merger, where the Third Circuit found a lack of antirust injury to object because the plaintiff "neither competes nor seeks to compete" in the relevant market.  *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 303 (3d Cir. 2007) (cited by Def. Mem. 23).  Here, AAPS's members do compete and are clearly harmed by Defendant ABMS's antitrust violations.  Dismissal here based on antitrust injury here would be unprecedented and unjustified.

### 3.   Defendant ABMS's Factual Speculation about Benefits from its MOC Program Are Misplaced on its Motion to Dismiss Here.

Ultimately Defendant ABMS resorts again to making factual assertions that its recertification is worthwhile, but such factual arguments are misplaced on a motion to dismiss.  (Def. Mem. 25-26)  If ABMS MOC were so worthwhile, then Defendant ABMS would not need to rely on the alleged restraint of trade to induce people to purchase and participate in it.  In fact, as explained in the Complaint:

> Defendant's ABMS MOC® program imposes far greater burdens than any analogous program in any other profession, and ***surveys demonstrate that an overwhelming majority of physicians – perhaps more than 90% – feel that this program is unjustified***.

Compl. ¶ 24 (emphasis added).

Completely absent from Defendant's factual assertions to defend ABMS MOC is recognition of how the program has become a massive money-making scheme for executives at ABMS and its co-conspirators, with executive salaries at the "nonprofit" companies far exceeding $500,000 a year.  (Compl. ¶ 53)  This is a far cry from a well-intentioned educational program for the good of the public, as might be offered by a university.  Instead, ABMS MOC is a big business that increases its profits by restraining trade, and Defendant's numerous agreements to impose ABMS MOC are fully subject to the antitrust laws.

Defendant ABMS insists that "[t]he alternatives to relying on certification are expensive and would increase the cost of credentialing physicians."  (Def. Mem. 25)  But Defendant offers no factual evidence to support its assertion that alternatives would somehow be less economical.  Instead, Defendant relies on outdated cases that predate its ABMS MOC program by many years, before Defendant turned recertification into a massive money-making scheme.  Defendant does not and cannot cite any contemporary evidence that the alternatives to its ABMS MOC would be more expensive.  Taking the allegations in the Complaint as true, as this court should on the motion to dismiss, "[t]here is no evidence that Defendant's ABMS MOC® program advances any legitimate goal for patient care."  (Compl. ¶ 25)  And Defendant's motion to dismiss provides no such evidence either.

Defendant ABMS also argues that "[i]f MOC were an unreliable indicator of quality care, hospitals and insurers would not rely on it."  (Def. Mem. 25)  But that argument merely begs the question of whether hospitals and insurers are excluding physicians based on antitrust violations by Defendant ABMS, rather than legitimate reasons.  The Complaint – which should be taken as true at this stage – explains that:

> Defendant ABMS has acted in concert with The Joint Commission, formerly the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), a private company that accredits more than 20,000 health care organizations and hospitals, including the Somerset Medical Center (SMC) in Somerville, New Jersey, to require formal recertification as a condition of having medical staff privileges.

(Compl. ¶ 25)

Defendant ABMS further argues that because it was able to have its ABMS MOC inserted into the Patient Protection and Affordable Care Act in the form of extra reimbursement under Medicare, then that somehow proves that the ABMS MOC program must be a proper basis for excluding physicians from hospitals and insurance plans.  (Def. Mem. 26)  But this argument does not disprove the allegations of restraint of trade, or require dismissal of the Complaint.  In no way did Congress give Defendant ABMS *carte blanche* to use its ABMS MOC program to restrain trade and reduce the output of medical services, as in causing the elimination of physician J.E. from the medical staff of SMC.  To the contrary, the congressional framework demonstrates its desire for physicians to continue to be able to practice with reimbursement by Medicare despite not participating in ABMS MOC.  Nothing Defendant ABMS cites in actions by Congress justifies ABMS's anticompetitive activities as alleged in the Complaint, such as causing physician J.E. to lose his hospital privileges because he did not recertify.  Defendant ABMS can no more claim immunity from an antitrust action because it was written into a

federal law than Microsoft or Apple Computer would be able to dismiss antitrust actions against them simply by citing government use of their products.  If anything, Defendant ABMS's citation to its placement in federal law suggests that it should be amenable to venue in any federal district, as the federal government itself is.

The Newark federal court decision from two decades ago, which granted a motion for summary judgment by the American Board of Internal Medicine, also fails to support Defendant ABMS's motion for dismissal here.  (Def. Mem. 26, citing *DeGregorio v. American Board of Internal Medicine*, *supra*).  That decision predates Defendant's costly ABMS MOC program at issue here by many years, and based its finding on a lack of evidence of reduction in output for medical services.  This case has alleged and will prove the reduction in output caused by Defendant ABMS, which is the essence of an antitrust violation.

In sum, Defendant ABMS seeks immunity for its agreements in restraint of trade by relying on its own unproven assertions that its costly and burdensome recertification is worthwhile.  Defendant's argument amounts, in essence, to an insistence that the antitrust laws do not apply to it.  But no precedent supports Defendant's view, and its agreements to impose its costly ABMS MOC program are subject to antitrust scrutiny.  Its motion to dismiss must be denied.

### C. Plaintiff AAPS States a Valid Cause of Action for Negligent Misrepresentation.

To assert a valid cause of action for negligent misrepresentation, a plaintiff must allege that "1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's

damages." *McCall v. Metropolitan Life Ins.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996). *See also H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138, 142-43 (1983) ("Negligent misrepresentation is ... [a]n incorrect statement, negligently made and justifiably relied upon, [and] may be the basis for recovery of damages for economic loss … sustained as a consequence of that reliance.") (superseded by statute on other grounds).

Plaintiff has fully alleged each of these elements, which is sufficient to survive the motion to dismiss.  The false information published by Defendant ABMS includes:

- Defendant's false statement that ABMS MOC "*enhances [physicians'] medical knowledge, judgment, professionalism, clinical techniques and communication skills*" (Compl. ¶ 78);

- Defendant's false statement that patients "*can count on quality patient care*" from physicians who purchase ABMS MOC (*id.* ¶ 79); and

- Defendant's false statement of "*Not Meeting MOC Requirements*" to describe physicians who decline Defendant's product (*id.* ¶ 80);

These create the false impression that Defendant's ABMS MOC is a "requirement" that is indicative of the medical skills of physicians, and that physicians who do not satisfy MOC "requirements" are somehow less competent.  (*Id.* ¶ 81)  Defendant further misleads the public by promoting a website with the deceptive name "certification matters," for patients to search on the names of individual physicians to see if they have complied with Defendant's ABMS MOC® program, "thereby falsely implying that physicians who decline to participate or who do not fully complete the program are somehow less competent physicians."  (*Id.* ¶ 82)

The falsity of the foregoing statements is an issue of fact unsuitable for resolution on a motion to dismiss.  At an appropriate time in this case, Plaintiff AAPS will present facts that Defendant's ABMS MOC® program has no significant correlation with the

medical skills of physicians.  (*Id.* ¶ 83)  Instead, Defendant's ABMS MOC program is designed primarily to enrich Defendant and its own executives, and is not a genuine attempt to improve quality of care for patients; many of the questions asked of physicians as part of Defendant's ABMS MOC, for which physicians must provide the preferred answers in order to be recertified, have no relevance to the quality of care that the physician provides.  (*Id.* ¶¶ 84-85)

Physicians, including AAPS members, are "a reasonably foreseeable recipient of that information" negligently provided by Defendant, which fully satisfies the second element required for a negligent misrepresentation claim.  *McCall*, 956 F. Supp. at 1186. (*Id.* ¶¶ 86-88).  Physicians, including AAPS members, "justifiably relied on the information."  *McCall*, 956 F. Supp. at 1186.  (*Id.* ¶ 89)  AAPS members have been injured as a result of these negligent misrepresentations.  (*Id.* ¶ 90)  Accordingly, Plaintiff AAPS has sufficiently alleged a valid cause of action for negligent misrepresentation.

Defendant ABMS asserts two arguments for dismissal of this common law claim, but neither argument withstands scrutiny.  (Def. Mem. 27)  First, Defendant ABMS argues that its statements are not "on their face" misrepresentations.  But there is no requirement that statements be "on their face" misleading in order to constitute actionable negligent misrepresentation.  For example, an omission often constitutes actionable negligent misrepresentation, even though there is nothing "on its face" that is false about an omission.  *See, e.g.*, *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450 (D.N.J. 1997) ("plaintiffs' fraud-based claims stem largely from misleading omissions… for which reliance may generally be presumed").  Second, Defendant ABMS argues that Plaintiff AAPS's members have not relied on Defendant's statements

to their detriment.  But Plaintiff AAPS's members have so relied to their detriment, and the Complaint sets forth sufficient details concerning that reliance to survive the motion to dismiss.  These two arguments by Defendant are further rebutted below.

Defendant ABMS relies on *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir. 1993), for its argument that its statements amount to mere "sales talk, or puffing" which might be considered non-actionable.  (Def. Mem. 27)  But in *Castrol* the Third Circuit ***rejected*** a defense of puffery, just as Defendant's similar argument should be rejected here.  987 F.2d at 949-50.  Defendant ABMS's statements like "Not Meeting MOC Requirements" in describing physicians who decline to incur the enormous time and expense to purchase the ABMS MOC proprietary product are clearly misleading. (Compl. ¶¶ 80, 86.)  As set forth in the Complaint, such "statements create the false impression that Defendant's ABMS MOC® is indicative of the medical skills of physicians, and that as a result physicians who decline to purchase Defendant's product are likely to be less competent."  (*Id.* ¶ 81)

As to Defendant's objection to whether there was detrimental reliance, New Jersey recognizes the relaxed standard of "indirect reliance."  *Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc.*, 617 F.3d 207, 218 (3d Cir. 2010).  The New Jersey Supreme Court has established that:

> Indirect reliance allows a plaintiff to prove a fraud action when he or she heard a statement not from the party that defrauded him or her but from that party's agent or from someone to whom the party communicated the false statement with the intention that the victim hear it, rely on it, and act to his or her detriment.

*Kaufman v. I-Stat Corp.*, 165 N.J. 94, 111, 754 A.2d 1188, 1195 (2000) (citing *Judson v. Peoples Bank & Trust Co.*, 25 N.J. 17, 134 A.2d 761 (1957).  It is not necessary for Plaintiff AAPS members to rely directly on Defendant ABMS's misrepresentations in

order to have a cause of action, but merely that Plaintiff's members relied on others (such as hospitals) that repeated the misrepresentations.  This is adequately pled, and the motion to dismiss for lack of reliance is unjustified.  "Physicians, including members of Plaintiff AAPS, have been compelled by Defendant's conduct to rely on its foregoing statements in order to remain on hospital medical staffs."  (Compl. ¶ 88)  This easily satisfies the undemanding requirement of indirect reliance.  (*Id.* ¶ 89)

Defendant ABMS again relies on precedent from the Seventh Circuit, where the "indirect reliance" doctrine may not have the stature it has here in New Jersey.  *See Great Cent. Ins. Co. v. Ins. Servs. Office*, 74 F.3d 778, 785 (7th Cir. 1996) (quoted at Def. Mem. 30).  That Seventh Circuit decision hinged on a finding that "[a]t worst [defendant] acted negligently, and as a remote consequence one of its customers lost some of its own customers."  *Id.* at 784.  But there is nothing "remote" about the consequences of Defendant ABMS's misrepresentations here, and the foreseeable harm it causes to Plaintiff AAPS's members.  Defendant's other cited authorities are likewise unhelpful to its motion to dismiss (Def. Mem. 28-29), or even stand against it.  For example, in *Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318 (D.N.J. 1999), the district court denied a motion to dismiss and allowed discovery to proceed on the false advertising claim.  *Id.* at 344.  The court expressly rejected the expansive view of non-actionable "puffery" that Defendant argues for here; instead, that court limited "puffery" to statements incapable of inducing reliance.  *Id.* at 341.  Defendant ABMS's statements at issue here are intended to and do induce reliance.

It is obviously not mere "puffery" for Defendant ABMS to target individuals by name on its "certification matters" website for the purpose of falsely branding them as

inferior professionals for "Not Meeting MOC Requirements."  (*Id.* at 80)  Rather, that is "specific, detailed factual assertions" which Defendant's own authorities emphasize can be actionable and which is not mere "puffery".  *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994).  And the fact that Defendant ABMS has induced other entities to impose its ABMS MOC program reinforces the claim of indirect reliance here by AAPS members, to their detriment.  (Def. Mem. 29)

Plaintiff AAPS's claim for negligent misrepresentation should therefore not be dismissed at this preliminary stage in this litigation.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant ABMS's motion to dismiss for improper venue or for failure to state a claim, or to transfer venue, should be denied in its entirety. In the event any merit is found in Defendant's motion with respect to venue, then Plaintiff AAPS should first be allowed to conduct discovery on the issue before a decision is made.  If any portion of Defendant's motion is granted, then it should be without prejudice and with leave to amend to correct any perceived deficiency.

Respectfully submitted,

<u>s/ Andrew L. Schlafly</u>

Andrew L. Schlafly (AS4533)
Attorney at Law
939 Old Chester Rd.
Far Hills, NJ 07931
Phone:  (908) 719-8608
Fax:  (908) 934-9207
Email: aschlafly@aol.com

Attorney for Plaintiff
Association of American Physicians &
Surgeons, Inc. (AAPS)

Dated: July 22, 2013