UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASSOCIATION OF AMERICAN PHYSICIANS & SURGEONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> AMERICAN BOARD OF MEDICAL SPECIALTIES, <br><br> *Defendant*. | Civil Action No. 13-2609 (PGS) (LHG) <br><br> **MEMORANDUM** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant American Board of Medical Specialties' ("ABMS" or "Defendant") Motion to Dismiss Plaintiff Association of American Physicians & Surgeons, Inc.'s ("AAPS" or "Plaintiff") Complaint for improper venue pursuant to FED. R. CIV. P. 12(b)(3) and/or for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6), or in the alternative, to transfer this matter to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) (ECF No. 11). AAPS alleges that ABMS reached agreement with twenty-four separate medical specialty boards, and acted in concert with a standard-setting organization, The Joint Commission, to impose formal recertification requirements on physicians that unreasonably restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. AAPS further alleges that ABMS made false and misleading statements regarding physicians who declined to participate in the recertification program. The Court decides this matter without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth herein, the Court

concludes that venue is improper in the District of New Jersey. The Court, therefore, in its discretion, will transfer, rather than dismiss, this action to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a).[1]

## I.     BACKGROUND

Plaintiff Association of American Physicians & Surgeons, Inc. ("AAPS") is a membership organization of thousands of practicing physicians organized under the laws of the State of Indiana with its principal place of business in Tucson, Arizona. (Compl. at ¶ 4). Its membership includes physicians practicing in the State of New Jersey. (*Id.*).

Defendant American Board of Medical Specialties ("ABMS") is a not-for-profit organization organized under the laws of the State of Illinois with its principal place of business in Chicago, Illinois. (*Id.* at ¶ 5). It serves as the umbrella organization for twenty-four medical specialty boards[2] ("Member Boards") and assists those boards in the development and use of standards in the ongoing evaluation and certification of physicians throughout the United States. (Def.'s Br. in Supp. of Mot. to Dismiss or Transfer ("Def.'s Br.") at 5). Each Member Board certifies physicians in a particular medical specialty provided those physicians: (1) voluntarily seek certification and complete an accredited medical residency program in the specialty; (2) pass an examination administered by the Member Board; and (3) otherwise comply with the Member Board's requirements for certification.

---

[1] Since the Court will transfer the case to the United States District Court for the Northern District of Illinois, the Court declines to address Defendant's alternative argument that, although venue is proper in New Jersey, the case should be transferred to the Northern District of Illinois for the convenience of the parties pursuant to 28 U.S.C. § 1404(a). Similarly, in light of the Court's decision to transfer, the Court declines to address the merits of Defendant's Motion to Dismiss for failure to state a claim.

[2] The twenty-four medical specialty boards are: The American Board of Allergy and Immunology; The American Board of Anesthesiology; The American Board of Colon and Rectal Surgery; The American Board of Dermatology; The American Board of Emergency Medicine; The American Board of Family Medicine; The American Board of Internal Medicine; The American Board of Medical Genetics; The American Board of Neurological Surgery; The American Board of Nuclear Medicine; The American Board of Obstetrics and Gynecology; The American Board of Ophthalmology; The American Board of Orthopedic Surgery; The American Board of Otolaryngology; The American Board of Pathology; The American Board of Pediatrics; The American Board of Physical Medicine and Rehabilitation; The American Board of Plastic Surgery; The American Board of Preventive Medicine; The American Board of Psychiatry and Neurology; The American Board of Radiology; The American Board of Surgery; The American Board of Thoracic Surgery; and The American Board of Urology. (Compl. at ¶ 11).

(*Id*.). Certification by a Member Board is a voluntary process and no physician is required as a condition of medical licensure to be initially certified by an ABMS Member Board. (Compl. at ¶ 20). A physician generally prefers to be certified in his specialty, however, because certification may imply a certain level of knowledge and expertise in a particular area of medicine that would be attractive to a health care institution, insurer, or patient seeking medical services.

Originally, a physician who was certified by an ABMS Member Board was certified for life. (Def.'s Br. at 6). Beginning in the 1970s and 1980s, however, ABMS and its Member Boards "recognized that the state-of-the-art in each medical specialty evolves rapidly and that a physician's knowledge of, and skills in, a particular specialty may deteriorate over time." (*Id*.). To address these concerns, ABMS and its Member Boards instituted a program for recertification whereby physicians were required to renew their certifications every ten years. In 2000, after recognizing the inadequacies of a program requiring recertification every ten years, ABMS and its Member Boards "agreed to evolve their certification programs to one of continuous professional development" called ABMS Maintenance of Certification® ("MOC"). (Decl. of Laura Skarnulis in Supp. of Def.'s Mot. to Dismiss ("Skarnulis Decl.") at ¶ 3). According to the Defendant, "[t]he basic objective of the MOC program is to provide assurance to patients, hospitals, and insurers that a physician is staying up-to-date with advances in the relevant specialty and continually enhancing the physician's knowledge in the specialty." (Def.'s Br. at 7).

The MOC program requires each physician who has chosen to be certified in a medical specialty by one of the twenty-four Member Boards of ABMS to satisfy four conditions in order to remain certified. First, MOC requires a physician to maintain a valid, unrestricted medical license and adhere to the guidelines of the relevant Member Board in terms of professionalism and personal conduct. (*Id*.). Second, MOC requires a physician to devote a specified number of hours taking

Continuing Medical Education courses and participate in other educational and self-assessment activities required by the relevant Member Board. (*Id*.). Third, MOC requires a physician to periodically take and pass an examination that is prepared by the certifying Member Board. (*Id*.). Fourth, MOC requires a physician to respond to periodic surveys regarding the care that they provide to their patients and identify strategies to improve that care. (*Id*. at 8). While the board certification process, of which the MOC program is a part, is entirely voluntary, the MOC program has been widely adopted and relied upon in the medical community.

In November 2009, Defendant ABMS and several of its Member Boards allegedly reached an agreement with the Joint Commission, a private company that accredits more than 20,000 health care organizations and hospitals, including the Somerset Medical Center (SMC") in Somerville, New Jersey, requiring physicians to obtain recertification through the MOC program in order to receive medical staff privileges at the medical facilities it accredits.[3] (Comp. at ¶ 13). According to the Plaintiff, "[t]o comply with [t]he Joint Commission's requirements, many hospitals impose parts or all of Defendant's ABMS MOC® program against physicians as a condition of having hospital staff privileges, and exclude qualified physicians simply because they do not participate in the . . . program." (*Id*. at ¶ 15).

One physician who has chosen not to participate in the MOC program is an AAPS member referred to in Plaintiff's Complaint as "J.E." (*Id*. at ¶ 29). According to the Plaintiff, J.E. had previously been certified by the American Board of Family Medicine ("ABFM") and had served as a physician at the Somerset Medical Center for twenty-nine years. (*Id*. at ¶¶ 30-31). In 2011, SMC

---

[3] Defendant contends that AAPS's allegation that the Joint Commission *requires* physicians at its accredited facilities to participate in the MOC program is conclusory. In support of its contention, Defendant relies on Plaintiff's allegation that "[t]o comply with [t]he Joint Commission's requirements, *many* hospitals impose *parts* or all of Defendant's ABMS MOC® program[.]" (Def.'s Br. at 8 n.2 (quoting Compl. at ¶ 15)) (emphasis added). In the view of the Defendant, it follows from Plaintiff's allegation that "not all hospitals require physicians who seek medical staff privileges to comply with parts or all of the MOC program." (Def.'s Br. at 8).

4

informed J.E. that he would lose his staff privileges unless he complied with the MOC program. (*Id*. at ¶ 32). In light of the time and expense required, which Plaintiff alleges was "far in excess of 100 hours for a typical physician" and "many thousands of dollars in fees and travel expenses[,]" J.E. chose not to participate in the program. (*Id*. at ¶¶ 35-36, 41, 43). Consistent with its earlier warning, SMC responded by excluding J.E. from its medical staff effective June 24, 2011. (*Id*. at ¶ 44). As a result, Plaintiff alleges that J.E.'s patients are "denied the benefit of being evaluated and treated by J.E." when taken to SMC for emergency care. (*Id*. at ¶ 45). Plaintiff further alleges that J.E.'s situation is common and that many hospitals throughout the country have decided to deny staff privileges to physicians who have chosen not to meet the requirements of the MOC program.

On April 23, 2013, Plaintiff filed a two-count Complaint in the United States District Court for the District of New Jersey. In Count One, Plaintiff alleges that the development and promotion of the MOC program constitutes an unlawful restraint of trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, Plaintiff alleges that ABMS restrained trade by: (1) seeking and obtaining agreements with its twenty-four Member Boards to impose formal recertification requirements on physicians as part of its MOC program; (2) seeking and obtaining agreement with the Joint Commission to require hospitals to enforce the formal recertification requirements; (3) inducing health insurance companies to exclude physicians who do not purchase and comply with the MOC program; (4) exempting older physicians from the requirements of the MOC program while requiring recertification by younger physicians; and (5) "acting in concert" with its twenty-four Member Boards to seek approval from the Federation of State Medical Boards ("FSMB") to impose the MOC program as a requirement for licensure by state medical boards. (*Id*. at ¶¶ 57-61). In Count Two, Plaintiff asserts a state law claim of negligent misrepresentation against ABMS. Specifically, Plaintiff contends that certain statements made by ABMS "create the false impression

5

that [the MOC program] is indicative of the medical skills of physicians, and that as a result physicians that decline to purchase Defendant's product are likely to be less competent." (*Id*. at ¶ 81). Moreover, Plaintiff alleges that "Defendant misleads the public with its website by inviting patients to search . . . the names of individual physicians to see if they have complied with [the MOC] program, thereby implying that physicians who decline to participate or who do not fully complete the program are somehow less competent physicians." (*Id*. at ¶ 82). Plaintiff seeks declaratory and injunctive relief "to enjoin Defendant's [alleged] continuing violations of antitrust law and misrepresentations about the medical skills of physicians who decline to purchase and spend time on it program." (*Id*. at ¶ 3). Plaintiff further seeks a refund of fees paid by its members to ABMS. On June 17, 2013, Defendant filed the instant Motion to Dismiss or Transfer Venue to the United States District Court for the Northern District of Illinois.

## II.   DISCUSSION

### A.   Standard of Review Under FED. R. CIV. P. 12(b)(3)

Pursuant to FED. R. CIV. P. 12(b)(3), a district court may dismiss an action for improper venue. Under 28 U.S.C. § 1391(b), venue is proper if a plaintiff brings the action in a district that is: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Pursuant to Section 12 of the Clayton Act, "[a]ny suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be

6

found or transacts business[.]" 15 U.S.C. § 22. A defendant seeking dismissal under Rule 12(b)(3) bears the burden of showing that venue is improper. *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982) (stating that "on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it.").

### B. Venue Under § 12 of the Clayton Act, 15 U.S.C. § 22

Plaintiff asserts in its Complaint that venue is proper in the United States District Court for the District of New Jersey under § 12 of the Clayton Act "because an event giving rise to this litigation occurred here, AAPS has members here, including its immediate Past-President, and Defendant conducts business here." (Compl. at ¶ 8). The location of a plaintiff or the events giving rise to the litigation, however, are irrelevant to a § 12 venue analysis. Rather, § 12 "permits venue in any federal district in which a corporation is an 'inhabitant,' may be 'found,' or 'transacts business.'" *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 n.6 (3d Cir. 2004). Being an "inhabitant" is "held to mean incorporated under the laws of that jurisdiction." *Id.* (citation omitted). Being "found" in a district is "generally equated with 'doing business' there, and requires greater contacts than does 'transacting business.'" *Id.* (citations omitted). A corporation is "found" where it "has 'presence' and 'continuous local activities' in the district." *Id.* (citations omitted). Here, Plaintiff does not allege that ABMS is an "inhabitant" of New Jersey or may be "found" in this State. A determination as to whether venue is proper in New Jersey, therefore, turns on whether ABMS "transacts business" in this State within the meaning of § 12 of the Clayton Act.

The Supreme Court has construed the phrase "transacts business," as used in the venue provision of § 12 of the Clayton Act, to refer to "[t]he practical, everyday business or commercial concept of doing or carrying on business of any substantial character[.]" *United States v. Scophony Corp. of America*, 333 U.S. 795, 807, 68 S. Ct. 855, 92 L. Ed. 1091 (1948). According to the

7

Supreme Court, "a corporation is engaged in transacting business in a district, within the meaning of [Section 12 of the Clayton Act], in such sense as to establish the venue of a suit . . . if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character." *Eastman Kodak Co. v. Southern Photo Materials, Co.*, 273 U.S. 359, 373, 47 S. Ct. 400, 71 L. Ed. 684 (1927). The Third Circuit has concluded that a not-for-profit professional membership organization transacts business in a district when it enforces its standards against constituent organizations through direct, continual supervision of those organizations in the judicial district. *See Am. Dental Ass'n*, 695 F.2d at 760. In describing the circumstances under which such an organization may be said to transact business so as to render it subject to the venue provision of the Clayton Act, the Third Circuit stated in *Am. Dental Ass'n* that "when a national professional organization . . . polices the qualifications of members residing in a judicial district, or sets standards which it attempts to enforce that directly pertain to the [medical] practice of its members and the treatment of their patients, the organization's activities should provide a basis for venue in the district in which they occur." *Am. Dental Ass'n*, 695 F.2d at 726.

In *American Dental Ass'n*, a dentist practicing in the Virgin Islands challenged a rule promulgated by the American Dental Association ("ADA"), and subsequently implemented by the Virgin Islands Dental Association ("VIDA"), which required dentists who specialized in a particular area of dentistry to limit their practice to that area. Plaintiff's affidavits in that case established that certain officers of the ADA had come to the Virgin Islands to attend a business meeting of VIDA to ensure that VIDA adopted ADA's newly promulgated Code of Professional Conduct. In addition, the affidavits revealed that a trustee of the ADA regularly participated in VIDA's annual meetings "to ensure that VIDA took no action inconsistent with ADA policy." *Id*. at 730. In concluding that the ADA had transacted business in the Virgin Islands of "sufficiently substantial character" to

support venue in the District of the Virgin Islands, the Third Circuit relied on the fact that the ADA had engaged in "direct, continual supervision in the Virgin Islands of VIDA to ensure enforcement of ADA's professional Code[.]" *Id.*

In its opposition, AAPS contends that ABMS "transacts business" in New Jersey and that venue in the District of New Jersey is therefore proper under § 12 of the Clayton Act. Relying on the Third Circuit's decision in *Am. Dental Ass'n*, Plaintiff contends that ABMS transacts business in New Jersey by "polic[ing] the qualifications" of physicians in this State. (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss or Transfer ("Pl.'s Opp. Br." at 12). Specifically, Plaintiff argues that ABMS "expressly policies [*sic*] the qualifications" of New Jersey physicians by maintaining a website that "asks patients who reside in this [State] to determine whether their physician has complied with [the MOC program], in order to decide whether to use that physician." (*Id.*). According to the Plaintiff, ABMS "thereby directly seeks to influence patients in [New Jersey] to dissuade them from seeing physicians who have not complied with the [MOC requirements] and puts pressure on those non-complying physicians to participate in the [MOC program]." (*Id.*). While Plaintiff contends that "[t]his easily satisfies the *American Dental Ass'n* test to establish antitrust venue over a standard-setting organization[,]" the Court finds the instant case to be distinguishable in several material respects.

First, the affidavits in this case, unlike those in *Am. Dental Ass'n*, indicate that ABMS did not engage in "direct, continual supervision" of its Member Boards in New Jersey to ensure enforcement of the MOC program. As indicated in the Declaration of ABMS Chief Operating Officer Laura Skarnulis, "[n]one of the ABMS Member Boards have their principal place of business in New Jersey[,]" and "[n]o ABMS officer or employee has resided in New Jersey during the past four . . . years." (Skarnulis Decl. at ¶ 6). Moreover, "ABMS conducts virtually all regular meetings of its

officers and Board of Directors in Chicago . . .[,] does not conduct regular meetings in New Jersey and has not conducted any meetings in New Jersey for at least the last ten . . . years." (*Id*. at ¶ 7). Defendant's affidavit further indicates that ABMS: (1) is not licensed to do business in New Jersey and does not maintain a registered agent in this State; (2) does not own any property, real or personal, in New Jersey; (3) does not operate any offices or employ any employees, agents or other representatives in New Jersey; (4) does not engage in any public relations, publicity, solicitations of business, or business activities in New Jersey; (5) is not subject to taxes, regulation or licensing by New Jersey; and (6) derives no revenue from goods used or consumed in New Jersey. (*Id*. at ¶ 4). Because ABMS does not engage in direct and continual supervision of its Member Boards within the State of New Jersey, ABMS cannot be said to have sufficiently transacted business within this State so as to establish venue under § 12 of the Clayton Act.

Second, in the opinion of the Court, the maintenance of a website through which patients can find out whether a particular physician in New Jersey is certified in a specialty does not rise to the level of "policing" the qualifications of physicians within this State. By listing the qualifications of New Jersey physicians on its website, ABMS simply provides information to consumers of medical services so that they may make an independent and informed decision as to whether they want to engage the services of a certified or non-certified physician. While the listing of a physician's qualifications on a website may create indirect "pressure . . . to pay into the ABMS MOC program" by effecting the decisions made by individual consumers, such indirect pressure, in the view of this Court, does not rise to the level of the direct and continual supervision found to support venue in *Am. Dental Ass'n*. Accordingly, the Court finds that ABMS's operation of its website does not constitute the transaction of business in New Jersey and, therefore, venue in the District of New Jersey is improper under § 12 of the Clayton Act.

### C.  Venue Under 28 U.S.C. § 1391

Plaintiff also asserts that venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. § 1391 because "'a substantial part of the events or omissions giving rise to the claim occurred' here." (Pl.'s Opp. Br. at 15) (citing 28 U.S.C. § 1391(b)(2)). Defendant argues, in opposition, that "[e]ven if AAPS were entitled to rely on § 1391, the allegations in the Complaint are insufficient to establish venue in this district." (Def.'s Br. at 15). The Court agrees.

The Third Circuit has explained that "[t]he test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottmann Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). "In assessing whether events or omissions giving rise to [a] claim[] are substantial, it is necessary to look at the nature of the dispute." *Id.* at 295. In addition, the Third Circuit has observed that "the venue provision 'favors the defendant in a venue dispute by requiring that the events or omissions supporting a claim be substantial . . . and that [s]ubstantiality is intended to preserve the elements of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute[.]'" *Bockman v. First Am. Mktg. Corp.*, 459 Fed. Appx. 157, 161 (3d Cir. 2012) (quoting *Cottman Transmission Sys.*, 36 F.3d at 294-95). Events or omissions that have only "some tangential connection" with the dispute are not sufficient to support venue under 28 U.S.C. § 1391(b)(2). *Cottman Transmission Sys.*, 36 F.3d at 294.

Here, in its attempt to show that "a substantial part of the events or omissions giving rise to the claim occurred" in New Jersey, AAPS relies exclusively "on the exclusion of J.E. from the medical staff of a hospital (SMC) located in this judicial district[.]" (Pl.'s Opp. Br at 15). In the view of the Court, however, the decision of the SMC to exclude J.E. from its medical staff is only

11

tangentially related to the claims against ABMS. [4] If accepted as true, Plaintiff's allegation only establishes Defendant's general contacts with New Jersey. It fails to show the jurisdiction where the acts or omissions giving rise to the Complaint occurred. *See Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (observing that "for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question," and that it "would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.").

The allegations of the Complaint and the affidavits submitted by the Defendant demonstrate that all of the "substantial" events underlying Plaintiff's claims occurred outside New Jersey. Specifically, nearly all of the activities that AAPS describes as anticompetitive, namely ABMS's development, production, and management of the MOC program, occurred at its only headquarters in Chicago, Illinois. Defendants have satisfied their burden of showing improper venue by offering evidence that the wrongful acts alleged in the Complaint did not occur in New Jersey, and Plaintiff has failed to rebut that evidence. Accordingly, the Court finds that venue in the District of New Jersey is also improper under 28 U.S.C. § 1391(b).

### D. Transfer Pursuant to 28 U.S.C. § 1406(a)

Although the Court concludes that venue is not properly laid in this district, the Court finds that the interests of justice are best served by transfer pursuant to 28 U.S.C. § 1406(a). Under § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "The decision whether a transfer

---

[4] If the exclusion of J.E. from the Somerset Medical Center was a such "a substantial part of the events or omissions giving rise" to Plaintiff's claims, one would assume that both J.E. and the SMC would have been named as parties to this action. The fact that they were not further supports the Court's finding that the exclusion of J.E. was only tangentially related to the claims against ABMS.

12

or dismissal is in the interests of justice, however, rests within the sound discretion of the district court.'" *J.F. Lomma, Inc. v. Stevenson Crane Servs.*, 2011 U.S. Dist. LEXIS 10998, at *15 (D.N.J Feb. 3, 2011) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C.Cir. 1983)).

Here, the Court finds that this action could have originally been brought in the Northern District of Illinois. It is undisputed that personal jurisdiction exists over ABMS in that forum based on the fact that ABMS is an Illinois not-for-profit corporation with its only office and principal place of business located in Chicago. In addition, ABMS does not dispute that venue properly lies there. The Court may transfer the instant case to another district in lieu of dismissal in the interests of justice, "'however wrong the plaintiff may have been in filing [its] case as to venue, [and] whether the court in which it was filed had personal jurisdiction over the defendant[] or not.'" *J.F. Lomma, Inc.*, 2011 U.S. Dist. LEXIS 10998, at *15 (quoting *Goldlawr, Inc. v. Heinman*, 369 U.S. 463, 465, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)). "Transfer is generally more in the interest of justice than dismissal." *Id*. (quoting *CAT Aircraft Leasing, Inc. v. Cessna Aircraft Co*., 650 F. Supp. 57, 60, 22 V.I. 442 (D.V.I. 1986)). Accordingly, in its discretion, this Court will transfer this action, pursuant to 28 U.S.C. § 1406(a), to the United States District Court for the Northern District of Illinois.

### III.     CONCLUSION

For the reasons set forth above, the Court will deny Defendant's motion to dismiss for improper venue and failure to state a claim, and, in its discretion, will transfer this action pursuant to 28 U.S.C. § 1406(a). The Court will also deny Defendant's motion to transfer venue under 28 U.S.C. § 1404(a) as moot. This matter shall be transferred to the United States District Court for the Northern District of Illinois. An appropriate Order follows.


April 2, 2013                                                                  *s/Peter G. Sheridan*
                                                                                PETER G. SHERIDAN, U.S.D.J.